## CHESAPEAKE & POTOMAC TELEPHONE CO. *v.* STATE TAX COMMISSION ET AL.

[No. 88, October Term, 1929.]

*Decided February 12th, 1930.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Parke, and Sloan, JJ.

*William L. Marbury* and *William L. Marbury, Jr.*, with whom were *Dozier A. Devane, Bernard Carter & Sons,* and *Marbury, Gosnell & Williams,* on the brief, for the appellant.

*Herbert Levy, Assistant Attorney General,* and *Simon E. Sobeloff, Deputy City Solicitor of Baltimore,* with whom were *Thomas H. Robinson, Attorney General,* and *A. Walter Kraus, City Solicitor of Baltimore,* on the brief, for the appellees.

Pattison, J., delivered the opinion of the Court.

The Chesapeake & Potomac Telephone Company, the appellant, pursuant to the right conferred upon it by section 253 of article 81 of the Code of Public General Laws of Maryland, appealed to the State Tax Commission from the valuation and assessment of its property made by the Appeal Tax Court of Baltimore City, for the purpose of taxation for the year 1926. The grounds of the appeal, as stated in the petition, were: "That the assessments are exorbitant and unreasonable and unlawful, and in excess of the value of

the properties of the petitioner * * *, and is not uniform with other properties recently assessed; and the method by which the assessment is arrived at is unreasonable and unlawful."

A hearing was had before the State Tax Commission, at which time oral testimony was taken, but, as there was no stenographer present, it was not, it seems, reduced to writing. In addition thereto, there was offered in evidence excerpts from the testimony given by Harry E. Gilbert, on December 15th and 16th, 1924, in proceedings before the Public Service Commission of Maryland, instituted to establish the rate to be charged by the telephone company for its services; and also certain exhibits hereafter referred to with greater particularity. At the conclusion of the testimony, the Chesapeake & Potomac Telephone Company asked the commission "to rule, as matter of law, that since by the undisputed and uncontradicted testimony and evidence in this case real property or real estate in Baltimore City is not assessed upon the tax books of Baltimore City in any year at a value exceeding eighty per cent. of its actual or true value, and that this is the inevitable result of the only reasonable and practical method adopted generally for the assessment of real property or real estate for the purposes of taxation; and since by the undisputed and uncontradicted evidence in this case the actual or true value of the poles, wires, cables, conduits, etc., included within the term 'physical structures' of the said petitioner and appellant, is $7,408,639.00; that in assessing the said physical structures in this case for the year 1926, the commission must deduct from said actual or true value of said physical structures twenty per cent. thereof, or $1,481,727.80, in order to make the assessment, for the purposes of taxation, of said real property of the petitioner and appellant uniform, and to equalize it, with the assessment of all other real property assessed in Baltimore City, otherwise the commission will deny to said petitioner and appellant the equal protection of the laws as secured to it by the Fourteenth Amendment of the Constitution of the United States."

This prayer was refused by the commission, and the following order was passed: "Ordered, by The State Tax Commission of Maryland, this 5th day of August, 1925, that the action of the Appeal Tax Court of Baltimore City in assessing the property described in this appeal is hereby affirmed and appellant's prayer refused."

The Chesapeake & Potomac Telephone Company appealed from this order of the commission, by filing, on September 4th, 1926, a "petition of appeal" against the appellees, the Judges of the Appeal Tax Court of Baltimore City, Mayor and City Council of Baltimore, and the State Tax Commission of Maryland, because, as stated therein,

"(a) The State Tax Commission of Maryland erred in affirming the assessment of your petitioner's property at the full value thereof as determined by said Appeal Tax Court when by the undisputed testimony and evidence in this case real estate in Baltimore City is not assessed at a value exceeding eighty per cent. of its actual or true value, thereby denying to your petitioner the right secured to it by section 249 (2) of article 81, Code of Public General Laws of Maryland, 1924, to have the assessment of its property in the City of Baltimore, equalized with the assessment of other like kinds of property in said City.

"(b) Because the refusal of the State Tax Commission to equalize the assessment of your petitioner's property with the assessment of all other real estate in the City of Baltimore denied to your petitioner the equal protection of the laws secured to it by the Fourteenth Amendment to the Constitution of the United States.

"(c) Because the State Tax Commission erred in refusing your petitioner's prayer" above set out.

Upon such appeal, a so-called transcript of the record from the State Tax Commission was filed in the Baltimore City Court on the 30th day of September, 1926, which, at the instance of the telephone company, was later withdrawn by an order of the court, and a modified transcript filed. This transcript consisted of said excerpts of the testimony previously given by Gilbert before the Public Service Commis-

sion of Maryland, and identified by him, and certain exhibits already referred to.

With this transcript of the evidence before the court, the appellant offered a prayer to which the appellees specially excepted upon the ground that "the record does not disclose that 'by the undisputed and uncontradicted testimony and evidence in this case, real property or real estate in Baltimore City is not assessed upon the tax books in Baltimore City in any year at a value exceeding eighty per cent. of its actual or true value' as set forth in said prayer."

In the confused state of the record, this prayer is not shown, but it would seem that it was the prayer refused by the State Tax Commission, already fully set out herein. The record fails to disclose any action of the court either upon the prayer or the special exception thereto.

At the time of filing the special exception to the prayer, the appellees filed the following motion: "The appellees move to dismiss the above entitled appeal for the reason that no question of law is presented by the record, and this court is therefore without jurisdiction in the premises."

This motion was at the time refused, but thereafter the court, upon further consideration, and after filing a written opinion which is found in the record, passed the following order: "For the reasons heretofore filed, the court is of the opinion that the motion to dismiss is proper to be granted, but full argument having. been heard on the merits of the case, and the court being of the opinion that there was no error in the ruling of the State Tax Commission, it is thereupon this 31st day of July, 1929, by the Baltimore City Court, ordered that the action of the State Tax Commission in the above entitled cause be and the same is hereby affirmed." It is from that order that the appeal in this case was taken.

The appeal from the State Tax Commission to the Baltimore City Court was taken pursuant to section 253 of article 81 of the Code, wherein it is said that such appeals shall be taken "on questions of law only."

The valuation of property is not a judicial function, and the court cannot be required to act as a board of review in the assessment of property. *Baltimore v. Ches. & Pot. Telephone Co.,* 131 Md. 50. The court is confined to an examination of the legal principles upon which the assessing body acted and if there be found no error of law applied by it to the injury of the complaining taxpayer, the court is without power to disturb the assessment. *Postal Telegraph Cable Co. v. Harford County,* 131 Md. 96; *Consolidated Gas Co. v. Baltimore,* 105 Md. 43; *Baltimore v. Bonaparte,* 93 Md. 159; *Fidelity Trust Co. v. Gorman,* 134 Md. 332.

Therefore, in deciding whether or not the court was right in holding that the appeal should have been dismissed, we must determine whether any question of law was involved in the decision of the State Tax Commission, from which an appeal could have been properly taken to the Baltimore City Court, and this must be determined from the evidence before it.

The evidence before Judge Stanton, by whom the case was tried in the Baltimore City Court, without the intervention of a jury, was: First, excerpts from the testimony of Harry E. Gilbert before the Public Service Commission, to which allusion has already been made; and, second, the exhibits of which we have spoken.

In the excerpts mentioned, Gilbert stated that he had served the city for ten years in appraisals and had also served the State of Maryland and the United States Government in like capacity. That his duties in connection with the Appeal Tax Court were: First, "to review assessments for taxation put upon the property by the other regular assessors," of whom there were twenty. Also "to appraise directly * * * the central business properties of the down-town section for taxation purposes," and "to give hearings when there are protests against assessments," and "to make recommendations to the court." That he had appraised many millions of dollars' worth of property, not only for the city, but for others. He was then asked the question, "Will you tell the commission whether or not the tendency has been within

the last several years, on the part of the city officials, to bring that value for tax purposes to a figure near the value of the property? A. Yes, but the market value and not the reproduction cost. Q. They have always considered the market value? A. Yes, we must. Q. How close to the market value, speaking generally, do you think that the tax assessment has been brought? A. That is a difficult question to answer. If applied to the city as a whole with respect to buildings, land and buildings, I suppose there would not be any great difference. I suppose we are no closer than seventy-five to eighty per cent." Later he was asked, "Mr. Gilbert, you testified yesterday that in your work as an appraiser for the Appeal Tax Court, that you tried to assess the property here on an eighty per cent. basis, did you not? A. No, I didn't mean to say that. And I am sure I didn't say that. What I said was, I think the question was asked me what relation these assessments over the city bear to the market value, and I said seventy-five or eighty per cent., approximately. Now the law says that we shall assess property at its full value in this state, and we attempt to assess it at approximately its full market value. We must always keep within the value, and we can never hope to get quite the one hundred per cent. It's the ideal condition that we can't attain, and then it must be borne in mind that the system here is to re-assess about twenty per cent. of the property each year, so that it takes five years to get over the entire city, and if there is any material change in value in those five years, the result is that a large part of the city is under assessed, and only the parts that are mostly recently assessed, if it is assessed properly, is assessed near its market value".

The question before the court below was whether the State Tax Commission, in its decision affirming the assessment placed by the Appeal Tax Court of Baltimore City, upon the physical structures of the Chesapeake & Potomac Telephone Company, fell into an error of law, and it was upon the record before it that the decision of this question was to be made.

The objection urged by the appellant against the valuation

and assessment of its property made, for the year 1926, by the Appeal Tax Court of Baltimore City, was that its property was intentionally assessed and valued at its full value, while all other real property in the City of Baltimore was uniformly and systematically valued and assessed for the same year at not more than eighty per cent. of its full value, contending that such method of assessment was not only in violation of the statutes of the state, but in contravention of both the state and federal constitutions.

Assuming that its property was assessed at one hundred per cent. of its value, though this fact is not conceded, nor is it shown by the evidence to exist, nevertheless the evidence found in the record utterly fails to show that all other property of the City of Baltimore was uniformly and systematically assessed at over eighty per cent. of its value, in other words, it is not shown by the evidence that the city, by any method or practice adopted and exercised by it, intentionally valued and assessed all other real property of the city at an amount less than one hundred per cent. of its value.

It is true, as shown by the fragmentary excerpts from the testimony of Gilbert, not taken before the State Tax Commission, but before the Public Service Commission, so early as 1924, that he, when asked "how close to the market value, speaking generally, do you think the tax assessment has been brought?", said: "That is a difficult question to answer. If applied to the city as a whole, with respect to buildings, lands and buildings, I suppose there would not be any great difference. I suppose we are no closer than seventy-five or eighty per cent." But he, at the same time, said the tendency within the last several years upon the part of the city officials is to bring that value to a figure near the value of the property, and when the question was asked on the following day: "Mr. Gilbert, you testified yesterday, in your work as an appraiser for the Appeal Tax Court, that you tried to assess the property here on an eighty per cent. basis, did you not? A. No, I did not mean to say that, and I am sure I did not say that. What I said was, I think the question was asked me, what relation these assessments over the city bear to the

market value, and I said seventy-five or eighty per cent. approximately. Now the law says that we shall assess property at its full value in this state, *and we attempt to assess it at approximately its full value.* * * * The system here is to assess about twenty per cent. of the property each year, so that it takes five years to get over the entire city, and if there is any material change in value in those five years, the result is that a large part of the city is under assessed and only the parts that are most recently assessed, if assessed properly, are assessed near its market value."

The statute (section 13, article 81 of the Code) of this state, requires all property to be assessed at one hundred per cent. of its value, as stated by Gilbert in his testimony.

In addition to the evidence offered above, certain exhibits are found in the record, with no explanation whatever as to their existence therein, or by whom they were made, and with no proof as to their correctness. In the first of these are listed ninety-three parcels of land located in various sections of Baltimore City, purporting to show the ratio of total assessed value to total sales prices. In the second exhibit are listed fourteen parcels of real estate, purporting to show the ratio of assessed values to sales prices of property valued and assessed after the sales were made. There are other numerous exhibits, the force or effect of which upon the questions presented are difficult, if not incapable, of understanding without explanation, which is not found in the record.

Upon the record as presented to the court below, it was not shown that the valuation and assessment of the appellant's property was made pursuant to any unlawful method or practice adopted and exercised by the taxing board of the city, of which the appellant could rightfully complain. It may be found, from a comparison of the values and assessments of different pieces of property within the city, that errors of valuation were committed, but these were not shown by the record to be more than the result of mistaken judgment, and, while the State Tax Commission had the power to correct such errors, it was not within the power of the

court to correct them on appeal from the State Tax Commission.

It follows, from what we have said, that we discover no error in the court's finding that the record before it presented no question of law involved in the decision of the State Tax Commission affirming the valuation and assessment made by the Appeal Tax Court. The court, however, affirmed the order of the State Tax Commission, when, we think, it should have dismissed the appeal. We will therefore remand the case that an order may be passed in conformity with this opinion.

> *Case remanded that an order may be passed in conformity with this opinion, the appellant to pay the costs.*