SUPERVISOR OF ASSESSMENTS OF ANNE ARUNDEL COUNTY *v.* SOUTHGATE HARBOR ET AL.

[No. 126, September Term, 1976.]

*Decided March 3, 1977.*

The cause was argued before Singley, Smith, Digges, Levine and Orth, JJ., and Robert F. Sweeney, Chief Judge of the District Court of Maryland, specially assigned.

*Ward B. Coe, III, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Ronald A. Baradel,* with whom were *Hartman & Crain* on the brief, for appellees.

Smith, J., delivered the opinion of the Court.

We are here concerned for the first time with the proper method of assessment for condominiums. We shall reverse a determination by the Circuit Court for Anne Arundel County that appellant, Supervisor of Assessments of Anne Arundel County (the Supervisor), improperly assessed the condominiums in question. The basic contention is that it was discriminatory error for the assessor to use a square foot basis of valuation of the land of the condominiums when a front foot basis was used for certain other land in the Annapolis area. The Maryland Tax Court found no error. Appellees here, Southgate Harbor et al. (the Taxpayers), then entered an appeal to this Court. After our decision in

*Shell Oil Co. v. Supervisor*, 276 Md. 36, 343 A. 2d 521 (1975), we transferred the case to the Circuit Court for Anne Arundel County for its consideration. The Supervisor appealed the unfavorable decision of that court to the Court of Special Appeals.[1] We granted the writ of certiorari prior to consideration of the case by that court.

We are here involved with two condominiums in Annapolis. The date of finality for the assessments in question is January 1, 1973. The tax court said in its opinion:

"The [Taxpayers] called . . . an attorney . . . who testified that from the tax record rolls of Anne Arundel County he had compiled approximately 235 waterfront properties and their assessed value for land, that he furnished this data to Mr. Harry Keith (a professional mechanical engineer and a Professor at the United States Naval Academy) who was the owner of Unit No. 9, Southgate Harbor. Mr. Keith testified that he took the information furnished him by Mr. Scott and programmed this information into a computer, from which he established the following: The average per square foot land assessment was 83 cents and the average mean assessment per square foot was 59 cents. From this data he also established the average front foot assessment at $129.57 and the average mean front foot at $99.05. His testimony was supported by computer print outs and charts.

"The [Taxpayers] then called Mr. George Lewis, Field Supervisor of Assessments for Anne Arundel County, as an adverse witness to determine from him the method used by the Department to establish land values, and the resulting as-

---

1. We shall not address ourselves to the propriety of the circuit court judge's action in remanding the case to the tax court for a consideration of the propriety of taxing a service easement, a point not presented by the Taxpayers in their appeal to the circuit court nor previously litigated by them before the tax court, since at oral argument before us the Taxpayers conceded this was error.

sessments thereon, for waterfront properties in Annapolis. The[y] ... elicited from Mr. Lewis that residential waterfront property was assessed by the Department uniformly on a front foot basis and that waterfront condominium property was uniformly assessed on a square foot basis because of its density.

"The Court is of the opinion that the basis upon which the Department assessed the land is not arbitrary, discriminatory, capricious or illegal. Furthermore, the Court feels that there was a complete absence of any affirmative evidence on behalf of the [Taxpayers] to justify granting the relief sought by the[m] ... and accordingly the assessment appealed from must be affirmed as to the land."

Lewis took issue with any implication that the waterfront properties mentioned were comparable to those of the Taxpayers, pointing to differences in accessibility by water and in the depth of the water. In fact, with reference to one group he said that there was "nothing but ... mud in front of them; no water at all." As a consequence, he said that when these assessments were used in computing an average there were "indications of a mean that doesn't mean very much."

The Taxpayers have presented no evidence of any kind as to the value of their property. Thus, there is no contention that their land is assessed at more than its full cash value. The requirement of Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 14 (b) (1) is that real property "shall be assessed at the full cash value thereof on the date of finality," a term defined as meaning "current value less an allowance for inflation, if in fact inflation exists."

The Taxpayers seize upon the language in the original Horizontal Property Act, Code (1957, 1973 Repl. Vol.) Art. 21 § 11-122 (b) at the time here applicable, stating that condominium units shall be assessed "in the same manner and to the same extent as such assessments are levied and

collected in the case of individual land parcels." From this they argue, and the circuit court judge agreed, that if other waterfront land in the Annapolis area was assessed on a front foot basis then their land must also be so assessed.

We have said on many occasions that a hornbook rule of statutory construction is that in ascertaining the intention of the General Assembly all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible. We have further said that a corollary to that rule is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory. *See, e.g., Thomas v. State*, 277 Md. 314, 317, 353 A. 2d 256 (1976), and the cases there cited. Therefore, we turn to the whole of the statute dealing with the manner of assessment of condominiums. Code (1957, 1973 Repl. Vol.) Art. 21, § 11-122 provides in pertinent part:

> "(a) Each property hereafter declared into a horizontal housing regime in the manner hereinabove set forth shall continue its original identity and unity for the purpose of evaluating the whole for assessment purposes in the manner now prescribed by law. The total evaluation thus produced shall be distributed among the condominium units into which the property was divided and the assessment of each unit shall be in direct proportion to the share and interest of each unit as established in the master deed and the declaration of the property into the regime and an individual assessment thereby placed on each condominium unit in accordance with such proportion that such unit bears to the whole property covered by the original declaration.
>
> "(b) Each of said condominium units shall be carried on the tax records of the county or City of

Baltimore in which it is located as a separate and distinct entity and all real estate taxes, including general and special assessments, shall be assessed, levied, and collected against each of the said several, separate and distinct units in conformity with the percentages of ownership established by the declaration in the same manner and to the same extent as such assessments are levied and collected in the case of individual land parcels."

The term "property" as used in § 11-122 is defined in § 11-101 (m) as "mean[ing] and includ[ing] the land, whether leasehold or in fee simple, the building or buildings, all improvements and structures thereon, and all easements, rights and appurtenances thereunto belonging."

We have also said that we consider the language of a statute in its natural and ordinary signification. *Bartell v. Bartell*, 278 Md. 12, 17, 357 A. 2d 343 (1976), and *St. Paul Fire & Mar. v. Ins. Comm'r*, 275 Md. 130, 139, 339 A. 2d 291 (1975). Thus, we read the command here as one that a property brought "into a horizontal housing regime" shall first be evaluated as a whole in the same manner in which it would be evaluated were it not under the Horizontal Property Act. After this has been done the value thus established is to be divided among the various units in the proportion established by the deed. Then under subsection (b) the assessed value for each of those units is to be carried on the tax records and taxes are to be collected from their owners based on those assessments in the same way in which taxes would be collected from the owner of a property not under the Horizontal Property Act based on the existing assessment for that property. Accordingly, the phrase "in the same manner and to the same extent" in subsection (b) does not mandate that any given method of valuing a property must be used for all land in a given area.

If we were to read the statute in the manner in which the Taxpayers read it, then other principles would come into play. The General Assembly when it enacted this statute is presumed to have been acquainted with our decisions and to

have acted accordingly. *See Bd. of Ex. of Land. Arch. v. McWilliams*, 270 Md. 383, 387, 311 A. 2d 792 (1973), and the numerous cases there cited. In *Baltimore City v. The State*, 105 Md. 1, 7, 65 A. 369 (1906), our predecessors observed, "The nature, location and other characteristics of the various kinds of property and interests subject to taxation render inevitable some diversity of method in their assessment." We echoed that statement in *Weil v. Supervisor of Assess.*, 266 Md. 238, 254, 292 A. 2d 68 (1972), when we said that "[v]aluation of land is not an exact science," a statement we repeated in *Fairchild Hiller v. Supervisor*, 267 Md. 519, 521, 298 A. 2d 148 (1973). In *Bornstein v. State Tax Comm.*, 227 Md. 331, 338, 176 A. 2d 859 (1962), Judge Henderson for the Court said that "[t]he mere fact that other classes of property may be assessed by a different method does not present a valid constitutional objection." This was after having observed:

> "It is firmly established in this State that the relative weight to be accorded to any relevant factor in a particular case is for the assessing authorities and not for the courts. *Seaboard Commercial Corp. v. Tax Comm.*, 181 Md. 234, 243-244 [(1942)]; *State Tax Comm. v. C. & P. Tel. Co.*, 193 Md. 222, 231-233 [(1949)]; *Tax Comm. v. Brandt Cabinet Works*, 202 Md. 533, 543 [(1953)]." *Id.* at 337.

In *Bornstein* the State Tax Commission used a capitalization of gross income in arriving at its valuation but it also considered net income and both original and reproduction cost.

In *Tax Comm. v. Brandt Cabinet Works*, 202 Md. 533, 97 A. 2d 290 (1953), the taxpayer owned a manufacturing plant. It was assessed on the basis of the actual construction cost for new buildings it erected in 1947 and 1948, while the assessment for old buildings was based upon cubic foot rates from a manual used by assessors. The Court said that "current cost appear[ed] to be a practical guide in arriving at 'full cash value.'" It pointed out that it had not been shown

that either method resulted in an assessment of more than full cash value.

Because valuation is not an exact science many, many methods have been used in attempting to determine fair market value. In *State Tax Comm. v. C. & P. Tel. Co.*, 193 Md. 222, 66 A. 2d 477 (1949), Judge Collins observed for the Court:

"Valuation of property for taxation is one of the oldest forms of administrative power and the courts should not interfere with the exercise of this administrative power unless it is unlawful, unreasonable, or against the substantial weight of the evidence. Perfect equality is unattainable. If assessments could be upset by comparison of a few widely different properties, on the basis of a selected few of the many elements or evidences of value, no assessment could stand." *Id.* at 235.

In *Weil* we rejected a contention that all land in a given area must carry the same assessment per square foot, saying:

"It is apparent that the appellants are under the impression that all land in a given area will carry the same assessment per square foot. We do not understand a subclassification as being created when the highest and best use of a property is taken into consideration in determining its present cash value. Physical characteristics of land will vary from lot to lot. The very size of a lot might well militate against its being used for certain purposes and suggest its use for other purposes. Good economics and good planning would dictate that there be some variation of use from lot to lot in a given area." *Id.* 266 Md. at 254.

More recently in *Shell Oil Co. v. Supervisor*, 278 Md. 659, 366 A. 2d 369 (1976), we rejected a contention that land was improperly valued at $3.00 per square foot for service station use when other commercial property in the area,

regarded by the taxpayers' expert as equally adaptable for service station use, was only assessed at $1.80 per square foot. We held that the tax assessor did not err when he took into consideration the type of buildings on those comparables, their zoning, and the need for service stations in the area in making his evaluation of the land. We there quoted from *Rogan v. Commrs. of Calvert County*, 194 Md. 299, 71 A. 2d 47 (1950), where the Court said:

> "The purpose of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States is to protect every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the provisions of a statute or by improper enforcement of a statute. Intentional and systematic undervaluation by assessors of other taxable property in the same class violates the constitutional right of a person taxed upon the full value of his property. However, mere errors of judgment on the part of State or County officials in making assessments will not support a claim of such discrimination. There must be something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officials and the validity of their actions will be presumed. When their actions are assailed, the burden of proof is upon the complaining party. *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154 [(1918)]; *Sioux City Bridge Co. v. Dakota County, Nebraska*, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979 [(1924)]." *Id.* at 309-10.

We referred also to *Charleston Assn. v. Alderson*, 324 U. S. 182, 190-91, 65 S. Ct. 624, 89 L. Ed. 857 (1945), and the numerous cases cited by Mr. Chief Justice Stone for the Court as being to like effect. We also quoted from that portion of *Rogan* in which it was said that this Court

"accept[ed] the rule, as adopted in other States, that the assessment of the property of others at a lower proportion of its value than that of a complaining taxpayer, which is not assessed at more than its fair cash value, does not make the tax on the latter invalid, unless the assessment was fraudulently made."

Allegations similar to those made by the Taxpayers here that in assessing their property there has been a subclassification of land in violation of Maryland Declaration of Rights Art. 15 and Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 14 (a) were considered and rejected in *Shell Oil Company* and *Weil*, which cases are controlling here. Moreover, in *Weil* we said:

> "So long as the end result of the assessment process is conscientiously, fairly and honestly to bring the assessment of all land to the same percentage of fair market value, a taxpayer is hardly in a position to contend that there is discrimination. This gives reason to the rule enunciated in *Rogan* that the fact an adjoining property owner might be assessed at a lower proportion of its value would not make the assessment invalid unless it was improperly made. Such a situation would contrast with that in *Sears, Roebuck v. State Tax Comm.*, 214 Md. 550, 136 A. 2d 567 (1957), where, without statutory authority for differentiation, personal property and real estate were assessed at different percentages of their 'full cash value.' " *Id.* 266 Md. at 254-55.

As Judge Singley recently pointed out for the Court in *Comptroller of the Treasury v. Diebold, Inc.*, 279 Md. 401, 369 A. 2d 77 (1977), "judicial review of decisions of the Maryland Tax Court is severely limited," since Code (1957, 1969 Repl. Vol.) Art. 81, § 229 *(l)* provided:

> "The circuit court . . . shall determine the case upon the record of the Maryland Tax Court . . . ; provided, that, unless such order is erroneous as a matter of law or unsupported by substantial

evidence appearing in the record, it shall be affirmed." [2]

There is no suggestion that the land of the Taxpayers is overvalued. There is no evidence of any lack of good faith on the part of the assessing authorities. No discrimination such as was shown in *Sears, Roebuck v. State Tax Comm.*, 214 Md. 550, 136 A. 2d 567 (1957), has been shown. No intentional violation of the essential principle of practical uniformity has been shown. Accordingly, we do not find the determination of the tax court erroneous as a matter of law. It follows, therefore, that the decision of the circuit court must be reversed.

> *Judgment reversed; case remanded to the Circuit Court for Anne Arundel County for passage of an order affirming the decision of the Maryland Tax Court; appellees to pay the costs.*

2. The present provision, substantially similar in form, is found in Code (1957, 1975 Repl. Vol., 1976 Cum. Supp.) Art. 81, § 229 (o).