486 A.2d 206

**SUPERVISOR OF ASSESSMENTS OF CALVERT COUNTY**

v.

**ST. LEONARD SHORES JOINT VENTURE.**

No. 260, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Jan. 8, 1985.

David M. Tralins, Asst. Atty. Gen., Stephen H. Sachs, Atty. Gen. and Kaye Brooks Bushel, Asst. Atty. Gen., Baltimore, for appellant.

Stephen L. Clagett, Prince Frederick, for appellee.

Argued before GILBERT, C.J., and WEANT and AL-PERT, JJ.

ALPERT, Judge.

The issue we must decide herein is whether bulk owner-ship of a subdivided tract of land should be considered by the tax assessor when assessing multiple lots owned by a single taxpayer. Appellant, the Supervisor of Assessments of Calvert County, did not consider the bulk ownership in accordance with a directive from the State Department of Assessments and Taxation ("SDAT"). We believe that the SDAT directive was properly issued and thus find bulk ownership is not a proper consideration in the assessment process.

## Facts and Proceedings

The instant appeal arises from the assessment of a large tract of waterfront property in Calvert County, subdivided into 117 lots. Appellee-developer purchased the tract with the hope of developing the property and reselling the lots to the public at large. Only 12 lots were sold as of the date of finality, January 1, 1982. Appellant, Supervisor of Assessments, assessed the property at $2,635,000.00 as of the date

of finality. The parties' disagreement revolves around the method of assessment utilized by the State. Appellee contends that in order to assess properly the property's value, the assessor must consider the "sell-out period," *i.e.*, the estimated period of time required to sell the lots.[1] To this end, appellee's expert analogized the unsold to inventory in stock in a business. This theory of assessment is contrary to the SDAT directive which states: "Each lot should be valued at its full cash value as of the date of finality, regardless of ownership.... Bulk ownership should not be considered."

In light of this directive, the assessment was affirmed by the Property Tax Assessment Appeal Board for Calvert County. Appellee-developer next appealed to the Maryland Tax Court, which also affirmed the assessment finding that it represented the full cash value of the property, as required by statute. In a written order and recommendation, the Hearing Examiner of the Tax Court opined:

> Petitioner's [appellee's] approach to fair market value is a staged sell-out over a period of years, ... finally reducing the end result to a net profit figure. This is good, sound business practice. *Unfortunately, it is not the way the assessment process works.*
>
> *To implement Petitioner's approach to value, would be to put the Assessor in the position of being a joint venturer with the petitioner.* If all the lots sold in one year, we have a value certain; if all lots sell over a period of years, we have a value dependent upon the future whims of the market place. (emphasis added).
>
> The procedure is clear: recording all 117 lots, prior to the date of finality, gave them all a fair market value as of the date of finality. That fair market value was established by the Property Tax Assessment Appeal Board as the retail sales price of *each* lot, added each to

---

1. Both the appellee's and appellant's experts agreed that a sell-out period was a viable consideration in the appraisal industry.

the other, for a total of $2,635,000. (emphasis in original).

I agree with this means of achieving a realistic market value of a hypothetical sale as of a hypothetical date. Accordingly, having considered all evidence presented, I recommend that the decision of the Property Tax Assessment Appeal Board be affirmed.

Still unwilling to accept the amount of assessment, appellee then appealed to the Circuit Court for Calvert County, where it prevailed. The Circuit Court noted that each party's expert recognized that a "sell-out" period was a viable consideration in appraisals. Accordingly, ignoring this period was found to result in a valuation exceeding the statutory requirement of "full cash value."[2] The decision of the Maryland Tax Court was reversed and the case remanded. Furthermore, the Circuit Court instructed the Tax Court to disregard that portion of the SDAT directive indicating that bulk ownership should not be considered.

## THE LAW

### I. *SDAT's Authority To Promulgate Directives To County Assessors*

The threshold consideration in the instant appeal is whether the SDAT possessed the requisite authority to issue the directive in controversy here. A review of the Maryland Code indicates that the SDAT is statutorily permitted to issue instructions to its officers. Md.Ann.Code art. 81, § 232(2) (1980 Replacement Vol.). This statute provides:

*Instruction to Officers.*—To supervise the administration of the assessment and tax laws of Maryland, and of each county or city thereof. As part of its supervision of such laws, the Department shall print or otherwise dupli-

---

**2.** *See* Md.Ann.Code art. 81, § 14(b)(1)(i) (1980 Replacement Volume) ("All real property ... shall be valued at its full cash value on the date of finality").

cate suitable instructions and directions which are to be distributed to the several boards of county commissioners, all assessing officers and others having any duties in relation to assessments, such instructions and directions to cover generally the duties to be performed and the procedures to be followed in the making and recording of assessments.

Subsection (7) of the same statute provides:

*Standards or units of assessment; instructions.*—To formulate, whenever the Department shall deem it practicable, standards or units for the assessment of various kinds of property, and to issue instructions to local supervisors of assessments in regard thereto and to require the use thereof. To confer with county commissioners and the board of municipal and zoning appeals of Baltimore City and visit each county as often as necessary.

Furthermore, Md.Ann.Code art. 81, § 244 (1980 Replacement Volume) permits the SDAT to formulate a uniform plan for the various assessors to follow. This statute provides:

The State Department of Assessments and Taxation from time to time shall formulate a uniform plan for the assessment of property, which shall be followed strictly by the property tax assessment appeal boards and by all assessors, for all subsequent reassessments and reviewals of assessments authorized by this article.

Hence, the SDAT is clearly empowered to issue such a directive. Moreover, administrative rules and regulations are generally valid if such rules are "reasonable and consistent" with the agency's statutory authority. *See Sullivan v. Board of License Commissioners for Prince George's County,* 293 Md. 113, 121, 442 A.2d 558 (1982) and cases cited therein. "The modern tendency of the courts is towards greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases." *Id.*

II. *The Substantive Validity Of The SDAT Directive*

Having determined that the SDAT has the general power to issue such directives, we must now specifically examine the substantive validity of the directive at issue. The directive is dated November 13, 1980, and in its entirety provides:

> The valuation of subdivided lots should consider each lot as a single legal entity. Each lot should be valued at its full cash value as of the date of finality regardless of ownership. This valuation should consider the highest and best use of each individual lot. Bulk ownership should not be considered.

> Article 81, Section 45(a) allows the separate assessment of each lot in a subdivision and Article 81, Section 14(b)(1) requires the valuation of all real property at full cash value. Additionally, Article 81, Section 19(a) requires the consideration of the highest and best use of the land.

The memorandum specifically instructs assessors to disregard the fact of bulk ownership, and, consequently, any applicable "sell-out" period. This is not to say the directive delineates a specific appraisal method; it, instead, limits the scope of factors to consider.

a. *Method of Assessment Utilized Is a Factual Determination*

■ The choice of the particular method of assessment employed is a question of fact, and, consequently within the expertise of the administrative agency. In *Verkouteren v. Supervisor of Assessments, Montgomery County*, 38 Md. App. 216, 380 A.2d 642 (1977), the taxpayers challenged the method and computation of depreciation. The case was dismissed for failure to exhaust administrative remedies, but this Court did discuss the merits in a general way. The propriety of an assessment was deemed to be an area within the expertise of the administrative agency. 38 Md. App. at 221, 380 A.2d 642. The Court went on to state, "Determining whether the method of depreciation causes the appellant's property to be assessed at something other

than full cash value is basically a factual question...." 38 Md.App. at 222, 380 A.2d 642. Similarly, in *Bornstein v. State Tax Commission*, 227 Md. 331, 176 A.2d 859 (1972) the taxpayer-owner of an apartment building clashed with the assessor over the method used to capitalize gross income. The taxpayer contended that the cost of reproduction should be utilized as an overall ceiling. The Court of Appeals disagreed and stated "It is firmly established in this State that the relative weight to be accorded to any relevant factor in a particular case is for the assessing authorities and not for the courts." 227 Md. at 337, 176 A.2d 859 (citations omitted). In the case *sub judice*, the method of assessment, and the decision to exclude consideration of bulk ownership, is also a factual determination and therefore within the purview of the administrative agency, not the courts. "The valuation of property is not a judicial function, and the court cannot be required to act as a board of review in the assessment of property." *Weil v. Supervisor of Assessments of Washington County*, 266 Md. 238, 251–52, 292 A.2d 68 (1972) (quoting *C & P Telephone Co. v. State Tax Commission*, 158 Md. 512, 517, 148 A. 832 (1930)). By effectively ordering the Calvert County assessor "to disregard that portion of the directive [providing] that 'Bulk ownership should not be considered,' " the circuit court usurped the authority of the administrative agency. This was not a matter of law where the court could freely substitute its legal judgment for that of the agency. *See Supervisor of Assessments v. Carroll*, 298 Md. 311, 469 A.2d 858 (1984).

b. *The "Rational Basis Test"*

Viewed from another perspective—that of the recently enunciated "rational basis test"—we believe that the circuit court erred in reversing the decision of the tax court. Ordinarily in analyzing the scope of judicial review, we would look to Md.Ann.Code art. 81, § 229(*o* ) (1980 Replacement Vol.) which provides:

 *Decision of circuit court.*—In any case, the circuit court for the county shall determine the matter upon the

record made in the Maryland Tax Court. *The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence* appearing in the record. In other cases, the circuit court may affirm, reverse, remand, or modify the order appealed from.

(emphasis added).[3]

As Judge Adkins observed for this Court in *Comptroller of the Treasury v. Ramsey, Scarlett & Co.*, 58 Md.App. 327, 338, 473 A.2d 469 (1984), *cert. granted*, 301 Md. 44, 481 A.2d 803 (1984). "[I]t is not always easy, however, to determine what is a question of law and what is a question of fact...." The issue in that case was whether the taxpayer's business was unitary in nature—a due process, constitutional issue. In discussing the scope of review on appeal, we noted the existence of two standards: the "substitution of judgment" and the "rational basis test." The "substitution of judgment" standard is applied to questions of law apart from any administrative expertise. 58 Md. App. at 340, 473 A.2d 469. In *Ramsey, Scarlett* the Court was applying judicially-developed standards to ordinary business operations to reach the constitutional, legal conclusion. *Id.* at 340, 473 A.2d 469. Thus, the Court could freely substitute its judgment for that of the agency.

 The debate in the instant case does not involve such a judicial standard; but instead, a factual question as to what methodology should be used to attain the subject assessment. Here we are dealing with a legal directive from the SDAT, providing a policy decision of that agency to exclude the consideration of bulk ownership in the assessment procedure. In turn, this policy must be applied and interrelated to the *facts* surrounding each taxpayer, thereby impacting upon questions of law and fact. The "rational basis test" applies when the agency is creating

---

**3.** *See also Supervisor of Assessments of Anne Arundel County v. Southgate Harbor*, 279 Md. 586, 595, 369 A.2d 1053 (1977) (reiterating statutory requirements for affirmance).

standards or resolving policy questions within the agency's expertise and interrelated with factual conclusions. 58 Md. App. at 339, 473 A.2d 469 (citing *Earth Resources Co. of Alaska v. Department of Revenue,* 665 P.2d 960, 964 (Alaska 1983)). This is a more deferential standard where "the court merely seeks to determine whether the administrative agency's decision is supported by the facts and has a reasonable basis in law." *Id.* at 340, 473 A.2d 469. If the circuit court had applied the "rational basis test," it would have reached a different result. The "agency expertise" of the SDAT was entitled to deference by the reviewing court, 58 Md.App. at 340, 473 A.2d 469, but such deference was not accorded in this case. Indeed, the circuit court instructed the assessor to ignore the agency's directive to disregard "bulk ownership." The circuit court also should have reviewed the "policy" behind the directive. *Id.* This was never addressed by the circuit court. Our application of the rational basis test indicates that the agency's decision has a reasonable basis in law and fact. The method used by the State does not fly in the face of the statutory requirement of full cash value. Ordinarily, cash value equals market value, but other factors can be considered. *Rogan v. Commissioners,* 194 Md. 299, 311, 71 A.2d 47 (1950). Here, the assessor testified that each lot was assessed individually by examining sales in that and comparable subdivisions. The state of roads and development of the property was also examined. Thus, relevant facts were considered and no principles of law were violated. As we suggested in *Ramsey, Scarlett,* the reviewing court should defer to the decision of the administrative agency as to (1) the standard it creates for assessment cases and (2) the policy issue it resolves by requiring uniform assessments.[4]

c. *Method of Assessment*

■ In addition to the deference accorded to factual determinations, appellant-assessor was not legally required to

---

4. *See infra* § II(d) ("Uniformity of Assessment").

follow any specific method of assessment. Neither the Maryland Annotated Code nor the Code of Maryland Administrative Regulations (COMAR) provide a specific assessment procedure which must be followed. Md.Ann.Code art. 81, § 14(b)(1)(i) (1980 Replacement Volume) does provide that "[a]ll real property ... shall be valued at its *full cash value* on the date of finality." Art. 81, § 14(b)(1)(ii)(1) goes on to state, "Full cash value means current value." Appellee contends that the State's failure to consider an applicable "sell-out" period resulted in an assessment exceeding the full cash value. Appellant responds that utilization of appellee's method is too speculative and contra to both the SDAT directive and Md.Admin.Code, tit. 18, § 02 (03) (1982). This COMAR section provides: "The valuation of subdivided land should consider each lot as a single entity regardless of ownership." This regulation clearly supports the position of the appellant. Furthermore, we are not convinced that the assessment method utilized by the State results in a valuation exceeding "full cash value." The choice of a valuation method is essentially a question of fact and therefore clearly within the expertise of the assessor,[5] not the judiciary.

█ In addition to the absence of a specific statutory method, the Maryland courts have also recognized that the assessment process is not an exact science and that it is permissible to utilize various methods. *See Supervisor of Assessments of Anne Arundel County v. Southgate Harbor*, 279 Md. 586, 593, 369 A.2d 1053 (1977) (assessing fair market value of condominiums); *Sears, Roebuck v. State Tax Commission*, 214 Md. 550, 557, 136 A.2d 567 (1957) (assessing stock in trade); *Brown v. Supervisor*, 43 Md. App. 153, 159, 404 A.2d 1083 (1979) (assessor accorded reasonable latitude in selecting a valuation method; here, depreciation schedules). In this regard, great deference is

---

**5.** *See supra* subsection II(a) for a more detailed discussion of the effect of factual issues.

given to the taxing authority and judicial review is limited. *Brown*,[6] 43 Md.App. at 157–58, 404 A.2d 1083. The calculations and factual conclusions of the assessor should not be disturbed so long as the ultimate figure represents the full cash value. *Id.* at 159, 404 A.2d 1083. In *Sears*,[7] the Court of Appeals stated different methods of assessment can be utilized without breaching any statutes or the constitution. 214 Md. at 557, 136 A.2d 567. The Court recognized the expertise of the assessor, but noted he must ultimately arrive at the full cash value. *Id.* at 557–58, 136 A.2d 567.

In sum, the assessor can utilize any reasonable method of assessment provided that the final assessment figure does not exceed the full cash value of the real property.[8] Again, we are not at liberty to delve into the factual decision rendered by appellant.

d. *Uniformity of Assessments*

Finally, the State argues that in order to achieve truly uniform assessments, the fact that one person owns more than one lot should not be considered. We agree. Such consideration would produce an inherent preference in favor of developers, as opposed to taxpayers who own single or scattered lots. The SDAT directive provides for equal treatment of all taxpayers, absent any consideration of their

---

**6.** The *Brown* case is not factually similar to the instant case. It involved the labeling of a tenant farmer's dwelling as non-agricultural, when the owner felt it should be deemed agricultural. The Court upheld the assessor's categorization and the method of depreciation employed.

**7.** The *Sears* case is not factually similar either, but instead, concerns assessments of stock in trade. The main issue in *Sears* was constitutional in nature.

**8.** The mere fact that each lot is treated individually for tax purposes does not produce an assessment exceeding the "full cash value." Instead, it produces a prejudice in favor of bulk owners. *See infra* II(d) ("Uniformity of Assessment").

total land holdings. Moreover, a particularly troublesome aspect of the "sell-out" period theory is the fuzzy line of demarcation between a developer and a person owning multiple lots. Specifically, exactly where should the line be drawn? Is the taxpayer who owns four lots or ten lots treated differently than a developer with twenty (plus) lots? Such differential treatment is facially unfair and possibly unconstitutional.[9] Additionally, as correctly noted by the Hearing Examiner, utilization of the "sell-out" period theory essentially places the State in the position of "joint-venturer" with the developer. The value would rely "upon the future whims of the market place."

## CONCLUSION

■■■ In conclusion, we hold that the judgment of the Circuit Court for Calvert County must be reversed because: (1) the SDAT was clearly empowered to promulgate a directive instructing assessors as to what factors to consider; (2) the method of assessment utilized by the assessor was a factual determination within his administrative expertise; (3) the substantive contents and application of the directive was subject to review under the "rational basis test" and should have been upheld as it is supported by the facts and has a reasonable basis in law; (4) there was no *per se* method of assessment which must be followed; and (5) application of the directive results in fair, uniform assessments. Accordingly, we hold that the Circuit Court for Calvert County erroneously reversed the Tax Court. Hence, we reverse the Circuit Court.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR CALVERT COUNTY FOR THE PURPOSE OF ENTERING A JUDGMENT CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.

---

**9.** *See also* Md.Decl. of Rights, art. 15 ("Uniformity of Taxation").