490 A.2d 1304

**Charles J. WARGO, et ux.**

v.

**STATE of Maryland, DEPARTMENT OF ASSESSMENTS & TAXATION.**

**No. 1119, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 15, 1985.

Charles J. Wargo, Baltimore, for appellants.

Jane E. Pilliod, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen. and Kaye Brooks Bushel, Asst. Atty. Gen., Baltimore, on the brief), for appellee.

Argued before WEANT, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

The issue we decide in this case is whether the State Department of Assessments and Taxation (SDAT) may lawfully require that an applicant for the homeowners' tax credit, authorized by Maryland Code (1957, 1980 Repl.Vol.), Article 81, § 12F–1, provide a copy of his or her federal income tax return as a prerequisite to consideration for eligibility.

Charles J. Wargo and Sallyann T. Wargo, his wife, the appellants, applied to the SDAT for a homeowners' tax credit for the 1981–82 tax year to be applied against the real property taxes levied on their Baltimore County home. Their application was denied by letter dated September 21, 1982 because they refused to submit a copy of their federal income tax return for that year, as mandated by the Code of Maryland Regulations (COMAR) 18.07.01.03. The appellants appealed to the Property Tax Assessment Appeals Board for Baltimore County. Following the Appeals Board's denial of their petition, the appellants sought relief in the Maryland Tax Court. There, Robert Young, administrator of the Tax Credit and Exempt Property Division of SDAT, testified that a federal income tax return had been required of every applicant for the homeowners' tax credit (who had filed a federal return) since 1976.[1] He explained that the federal return was required because it included data which was not found on the state income tax return

---

1. The credit was created by Laws of Maryland, 1974, Ch. 750 and has been repeatedly reenacted with amendments in subsequent legislative sessions.

but was necessary in the computation of the amount, if any, of tax credit due the applicant.[2]

The Tax Court affirmed the decision of the Appeals Board, and the appellants then appealed to the Circuit Court for Baltimore County. On August 2, 1984, the trial court agreed with the determination of the Maryland Tax Court, and this appeal followed.

The appellants here urge, as they did below, that Art. 81, § 12F-1 does not give the SDAT the statutory authority to require applicants for the homeowners' tax credit to submit their federal tax return as a condition precedent for eligibility. They also argue that COMAR 18.07.01.03, which provides that an applicant "shall submit with the application form copies of the federal income tax return and accompanying schedules and forms," constitutes agency-made legislation under the guise of rule-making power. The appellants further contend that the SDAT's requirement that a copy of the applicant's federal income tax accompany the application for the tax credit constitutes an illegal search and seizure prohibited by the Fourth Amendment to the United States Constitution. We find no merit in any of the appellants' arguments and affirm the decision of the court below.

■ The Homeowners' Tax Credit Program was enacted by the General Assembly for the purpose of providing assistance to low income Maryland residents for whom payment of the property taxes levied on their homes is an excessive financial burden. *Dept. of Assess. & Tax. v.*

---

2.  Art. 81, § 12F-1, *supra,* provides for a credit to a homeowner against the total real property taxes levied upon his dwelling. The credit is granted in the amount of the total real property taxes in excess of a percentage of the combined gross income of the homeowner and those who reside in the dwelling who are not his dependents. The credit is not available to a homeowner whose net worth exceeds $200,000.00. "Gross income" for purposes of computing the credit is defined in Subsection (a)(6) much more broadly than the income subject to the Maryland Individual Income Tax. *Cf.* Art. 81, § 280(a), *supra.*

*Glick,* 47 Md.App. 150, 422 A.2d 34 (1980). Eligible persons may have their property tax bills reduced in proportion to their ability to pay as determined by the parameters of the program. The precise amount of the reduction depends upon the amount of the tax bill as compared with the gross annual income of the applicant. Section 12F–1 sets forth the scheme for obtaining a property tax credit. Subsection (f) provides:

(f) *Oath or affirmation.*—The application for the tax credit shall be made under oath or affirmation that the matters and facts stated in the application are true to the best of the applicant's knowledge, information, and belief. The applicant may be required to provide copies of income tax returns, or other evidence of income, interest, dividends, rents, money paid or received, or net worth to substantiate the application for the property tax credit.

It is evident from the language of this subsection that in addition to requiring that the applicant attest by oath or affirmation to the truth of the application's contents, the legislature empowered the SDAT to seek verification of the financial information by resort to tax returns and other evidence of income or net worth. Additionally, in subsection (k) of that same section, the legislature gave the SDAT the authority to "promulgate rules and regulations to implement this subtitle." Pursuant to this statutory authority, the SDAT promulgated certain regulations designed to facilitate the implementation of § 12F–1. COMAR 18.07.01.03 establishes the relevant tax credit application procedures:

.03 Application Procedures Established.

A. The Department of Assessments and Taxation has established specific procedures for applicants to complete the Homeowners' Tax Credit application.

B. Application Procedures Listed.

(1) An applicant shall submit with the application form copies of the federal income tax return and accompanying schedules and forms.

(2) An applicant seeking to exclude employee business expenses from the gross income reported shall submit with the tax credit application a copy of federal Internal Revenue Service Form 2106.

(3) An applicant may be requested to complete an affidavit to substantiate any information reported on the application.

(4) An applicant seeking to exclude the income of a spouse on the basis of a marital separation shall complete an affidavit setting forth the date separation occurred and stating the unlikelihood of the spouse returning to the dwelling house.

(5) An applicant not filing by the September 1 deadline shall complete an affidavit stating the reason for the untimely filing if the application is to be considered for an extension.

(6) An applicant who, pursuant to a court order or separation agreement, permits a spouse, former spouse, or children of that person to reside in the dwelling house without payment of rent, shall submit with the application a copy of the court order.

(7) An applicant who refuses to submit any information required under Article 81, § 12F-1, Annotated Code of Maryland, and the regulations, shall be denied a tax credit for failure to substantiate the income reported.

C. The Department may establish additional application procedures which do not appear here, if considered necessary and if not inconsistent with the regulations.

■■■ We believe that the statutory scheme by which this tax credit program is governed contemplates that substantiation of eligibility in addition to the information contained within the application form may be required of tax credit applicants, and authorizes the SDAT to promulgate rules which indicate when and in what form that substantiation shall be provided. We likewise conclude that the SDAT regulation requiring the submission of the applicant's federal tax return is reasonable and consistent with the letter

and policy of § 12F–1. *Supervisor of Assessments of Calvert Co. v. St. Leonard Shores Joint Venture*, 61 Md.App. 204, 486 A.2d 206 (1985). We hold, therefore, that the SDAT properly denied the appellants' application because they refused to provide the necessary financial data in the form of their federal tax return.

Lastly, we hold that a voluntary submission of individual tax returns as an eligibility prerequisite for a State benefit program involves neither a search nor a seizure. A "search" in the constitutional sense necessarily involves violating the security of one's person, house, or other constitutionally protected area. *Venner v. State*, 30 Md.App. 599, 354 A.2d 483 (1976), *aff'd*, 279 Md. 47, 367 A.2d 949, *cert. denied*, 431 U.S. 932, 97 S.Ct. 2638, 53 L.Ed.2d 248 (1977). It is "an invasion and quest, a looking for or seeking out, a prying into hidden places for that which is concealed." *Minnick v. State*, 4 Md.App. 81, 84, 241 A.2d 153, *cert. denied*, 251 Md. 751 (1968). While one's papers and effects may be entitled to this constitutional protection, we do not have here an effort by a State agent to violate the security of the appellants' persons, their home, or their papers by any form of a search or seizure. What we do have is a statutorily authorized request by a State agency for the submission of the appellants' tax returns to determine their eligibility for a State benefit program. The decision to seek the homeowners' tax credit was made by the appellants, and the course of action they selected as a result was entirely voluntary. When the appellants refused to comply fully with the application procedures, the SDAT properly refused to consider their eligibility for a tax credit. Art. 81, § 12F–1, *supra;* COMAR 18.07.01.03B.

Relying on *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the appellants argue that they were entitled to obtain a judicial review of the reasonableness of the SDAT's demand for a copy of their federal income tax return prior to the SDAT's denial of their

application for this credit. The holding in *See v. City of Seattle*, does not support their contention. In that case the owner of a business was arrested for refusing to permit a representative of the City of Seattle Fire Department, as part of a routine city-wide canvass to obtain compliance with the City's fire code, to enter and inspect his commercial warehouse. The inspector had not obtained a warrant and did not have probable cause to believe that a violation of any ordinance existed therein. The Supreme Court held that an agency may inspect pursuant to a validly obtained administrative subpoena but that the subpoenaed party could obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply. Because there was no search or seizure of the copies of the appellants' federal tax return in the instant case, the Fourth Amendment's prohibition against illegal searches and seizures is simply inapplicable.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANTS.