PURIFOY ET AL. *v.* MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, TRUSTEE ET AL.

[Misc. No. 1, September Term, 1974.]

*Decided November 7, 1974.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE and O'DONNELL, JJ., and JAMES C. MORTON, JR., Associate Judge of the Court of Special Appeals, specially assigned.

*William A. Snyder, Jr.,* and *Donald C. Greenman,* with whom were *Ober, Grimes & Shriver* and *Ben R. Miller* on the brief, for petitioners.

*Daniel H. Honemann* and *Allan H. Fisher, Jr.,* with whom were *Walter E. Black, Jr., Robert Sloan* and *Clapp, Somerville, Black & Honemann* and *Fisher & Fisher* on the brief, for respondents.

MURPHY, C. J., delivered the opinion of the Court.

Carolyn Bauernschmidt Purifoy (Carolyn) and her mother Grace M. Bauernschmidt (Grace) (the appellants) instituted a declaratory judgment proceeding on October 10, 1972, in the United States District Court for the District of Maryland; they sought a declaration that by reason of the provisions of Maryland Code (1957, 1973 Repl. Vol.) Art. 16, § 78 (c), the terms "child," "children," "descendants" and similar terms used in trust instruments which were executed by various members of the Bauernschmidt family and which became effective prior to June 1, 1947, included Carolyn, an adopted child. Concluding that the threshold issue in the case involved construction of a state statute "which may be determinative of the cause . . . as to which there is no controlling precedent in the decisions of the Court of Appeals of Maryland," the District Court, acting in pursuance of the Uniform Certification of Questions of Law Act, Code (1974) Courts and Judicial Proceedings Article, §§ 12-601 to 12-609, certified for our consideration a "question of law and statement of facts relevant thereto." In a memorandum opinion accompanying its certification order, the District Court set forth the factual and legal background of the case as follows:

"In general, all five instruments [1] create trusts, the income or portion of income thereof to be paid to William Bauernschmidt, Jr. for his life, and upon his death the income and/or principal to be paid to the said William Bauernschmidt, Jr.'s 'children' or 'descendants' living at his death. If he should die without child or descendant, the share would be distributed in various ways to William Bauernschmidt, Jr.'s brothers, sisters, first cousins, nephews, or nieces. Each trust instrument was executed and became effective prior to June 1, 1947.

"William Bauernschmidt, Jr. and his wife Grace were married in January, 1940. At the time of their marriage, Grace already had a natural daughter living with her, the plaintiff Carolyn. After two attempts to have children by Grace resulted in miscarriages, William legally adopted Carolyn on January 13, 1948. William Bauernschmidt, Jr. died on July 24, 1972.

"The critical question presented by the instant case is as follows:

"Do the terms 'child,' 'children,' 'descendants,' and similar terms used in the five trust instruments include the plaintiff Carolyn Bauernschmidt Purifoy, an adopted child, (and her descendants)? "

* * *

"From a complete consideration of all the trust instruments in the instant case, this Court finds that it is impossible to determine whether the testators or settlors actually intended to include or exclude adopted children. The only terms used to describe the class in question are 'child,' 'children,' and 'descendants.' No reference is made to adopted children in any of the instruments. At the time each instrument was executed, William Bauernschmidt, Jr. was unmarried and without any natural children. Thus the

---

1. Only four trust instruments — three wills and a deed of trust — are involved in the case before us.

terms 'child,' 'children,' etc. could not have designated any particular person or persons. The gift was to a class that would come into existence some time in the future."

\* \* \*

"Since adoption was unknown to the common law, the state statutes with their judicial construction govern the rights and liabilities of adopted children. In Maryland, the statute in effect from 1912-1947 (the period when the five trust instruments at issue became effective) was Article 16, §§ 76 and 78, which read as follows:

"76. The effect of such decree of adoption shall be to entitle the child so adopted to the same rights of inheritance and distribution as to the petitioner's estate, and the same rights or protection, education and maintenance as if born to such petitioner in lawful wedlock, and the natural parents of such child shall be freed from all legal obligation towards it, provided that where such child inherits property from its adopted parent or parents, upon it dying intestate without issue the property thus inherited shall descend and be distributed to the same persons who would take the same by inheritance and in course of distribution if the child had been the child of the adopted parents born to them in lawful wedlock; provided, however, that this shall not be construed to limit or interfere with the power of disposition over such property by gift, grant, devise, bequest or otherwise by said adopted child.

"78. The term 'child' or its equivalent in a deed, grant, will or other written instrument shall be held to include any child *adopted by the person executing the same*, unless the contrary plainly appears by the terms thereof, whether such instrument be executed before or after the adoption. [Emphasis added by District Court.]

"The Maryland Court of Appeals construed this statute in

the case of *Eureka Life Insurance Co. v. Geis,* 121 Md. 196 (1913) to allow an adopted child to take under the will of his adoptive parent, but not to take through the parent from the parent's lineal or collateral kindred. In 1947, Maryland's adoption law underwent a major revision, the purpose of which was to accord adopted children *all* of the legal rights of natural children and to sever all of the adopted child's ties with his natural parents. Article 16, § 78 (c) of the new law [chapter 599 of the Acts of 1947] read as follows:

> "The term 'child,' 'heir,' 'issue,' 'descendant' or an equivalent in a deed, grant, will or other written instrument shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the interlocutory decree of adoption, if any, and if none, before or after the entry of the final decree of adoption.

"This section soon came before the Court of Appeals in the case of *Gutman v. Safe Deposit & Trust Co.,* 198 Md. 39 (1951). In *Gutman* the testatrix died in 1923 and in her will gave a life estate to her son with the remainder to the son's 'child or children or descendants.' The son died in 1948 and was survived by a natural child and a child adopted prior to 1947. The Court declared that the only issue before it was whether the adoption statute was retrospective. The Court held that the Act was *not* retrospective, that the law in effect at the testatrix's death (1923) was to be applied, and that, consequently, the adopted child could not take as a 'child' or 'descendant' under the will of his adoptive parent's mother.

"In 1961, however, [by chapter 287 of the Acts of 1961] the Maryland Legislature amended Article 16, § 78 (c) by adding the following language at the end of the section:

> ". . . in the event such instrument was executed *prior to June 1, 1947,* the provisions of this subsection shall apply to those adopted persons as

to whom the interlocutory decree of adoption, if any, and if none, the final decree of adoption was entered on or after June 1, 1947. [Emphasis added by District Court.]

The effect, if any, of this amendment has yet to be determined by the Court of Appeals.

"In sum, this Court is confronted with a case in which there are *two* diametrically opposed rules of construction that can be applied to the trust instruments. One rule, embodying an affinity for blood relations, was in effect at the time of execution and effective dates of the wills, while the recent rule, reflecting a fundamental shift in favor of full rights for adopted children, was in existence when the plaintiff Carolyn was adopted and when the life tenant died. Although Maryland appears to adhere to the principle that the law in effect at the execution of the will is to be applied (*see Gutman v. Safe Deposit & Trust Co., supra,*) this precept cannot be invoked if the later statute is deemed to have a retrospective effect. Therefore, the *threshold issue* in the instant case is whether Article 16, § 78 (c), *as amended* in 1961, renders the Act of 1947 retrospective. This question involves only the construction of a state statute and does not entail any consideration of the rights guaranteed by the United States Constitution. For if the statute is held prospective, no constitutional issue is raised. It is only if a retroactive construction is placed on the statute that a second and separate issue emerges — whether the retroactive statute divests vested property rights in violation of the due process clause of the fourteenth amendment.

\* \* \* "

The question of law certified by the District Court is as follows:

"Does the Act of 1961, Chapter 287 [the 1961 amendment to Article 16, § 78 (c)], render the Act of 1947, Chapter 599, retrospective so that the

terms 'child,' 'children,' 'descendants' or an equivalent in instruments executed and effective prior to June 1, 1947, include adopted children if the adoption took place after June 1, 1947; or does the Act of 1947, Chapter 599, as amended by the Act of 1961, Chapter 287, remain prospective so that the terms in question do not include adopted children where the instruments were executed and effective prior to June 1, 1947, and where the adoption occurred after June 1, 1947? " [2]

### (1)

The appellants claim that the provisions of § 78 (c) are so clear, explicit and direct that no interpretation or construction is needed; they urge that we summarily dispose of the certified question by declaring that § 78 (c), by its plain and specific terms, applies "to those adopted persons [like Carolyn] as to whom a final decree of adoption is entered on or after June 1, 1947, even in the event that the instrument in question was executed prior to June 1, 1947." The trustees, on behalf of the alternative contingent remaindermen (the appellees), contend that the appellants' construction of § 78 (c) "requires a narrow and literal reading of the 1961 amendment" ; that such a construction is inconsistent with the general scope and purpose of § 78 (c), with its legislative history, and with judicial interpretation; and that to apply the statute as appellants urge would retrospectively divest the interests of the alternative

---

2. The four trust instruments in question are the last will and testament of Margaretha Bauernschmidt, and the first and second codicils thereto, dated, respectively, March 25, 1911, May 11, 1911, and November 22, 1911, all of which were duly admitted to probate on December 18, 1912; deed of trust from William Bauernschmidt to Safe Deposit and Trust Company of Baltimore (now Mercantile-Safe Deposit and Trust Company), dated July 12, 1924, and deeds supplemental thereto dated March 16, 1925, and November 25, 1930, respectively; last will and testament of William Bauernschmidt, dated June 25, 1934, which was duly admitted to probate on December 27, 1934; and the last will and testament of Sarah Bauernschmidt, and first codicil thereto, dated January 17, 1935, and March 28, 1940, respectively, both of which were duly admitted to probate on November 3, 1941.

contingent remaindermen in contravention of fundamental principles of constitutional law. They say that the proper construction of § 78 (c), as amended in 1961, is that it is applicable to all instruments *effective* after June 1, 1947, regardless of the date of execution of the instrument. This construction is characterized as "absurd" by appellants since it would necessitate a determination "that the Legislature understood the words 'executed prior to June 1, 1947' to mean 'executed prior to 1947 and effective after 1947' in the 1961 amendment to Article 16, § 78 (c)." The appellants maintain that the words "effective" and "executed" are technical terms having their own discrete, definite meanings; that it is unlikely that the legislature used "executed" to encompass both the terms "executed" and "effective" ; and that it is inconceivable that the legislature used "executed before" to mean both "executed before" and "effective after." That it did not so intend, appellants claim, is clear from the application of § 78 (c) not merely to wills, which ordinarily are effective at a time subsequent to execution, but also to deeds, grants, and "other instruments," which ordinarily are effective at the same time they are executed.

The title to chapter 287 of the Acts of 1961 (the 1961 amendment), describing the act's purpose in amending § 78 (c), specifies that it was "to clarify the legal effect of the use of the terms 'child', 'heir', 'issue' and 'descendant' or an equivalent in an instrument executed prior to June 1, 1947." As heretofore indicated, the body of the act provides that where the instrument "was executed prior to June 1, 1947," the provisions of § 78 (c) would be applicable to persons adopted after June 1, 1947. Whether the legislature intended that the 1961 amendment to § 78 (c) would apply retrospectively to instruments executed prior to June 1, 1947, where the adoption occurred after that date, must be determined by a careful examination of the statute itself, since the cardinal rule of construction of a statute is to ascertain and carry out the real legislative intent. *See Scoville Service, Inc. v. Comptroller of the Treasury,* 269 Md. 390, 306 A. 2d 534 (1973). We must, of course, construe the

statute according to the ordinary and natural import of its language; it is the language used in the statute which constitutes the primary source for determining the legislative intent. *Giant of Maryland, Inc. v. State's Attorney for Prince George's County,* 267 Md. 501, 298 A. 2d 427 (1973). Where there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the legislature. *Maryland-National Capital Park & Planning Commission v. Mayor & Council of Rockville,* 272 Md. 562, 325 A. 2d 748 (1974). Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view toward making the statute express an intention which is different from its plain meaning. *Gatewood v. State,* 244 Md. 609, 224 A. 2d 677 (1966); *Secretary of State v. Bryson,* 244 Md. 418, 224 A. 2d 277 (1966); *Pressman v. State Tax Commission,* 204 Md. 78, 102 A. 2d 821 (1954).

Nothing appears in the history of § 78 (c) that would indicate that the legislature used the word "executed" in the statute in other than its usual or customary sense. That the words "executed" and "effective," in common parlance, have distinct meanings is clear. For instruments such as wills, the date of execution and the date of effectiveness are usually different. *See generally* J. Alexander, *Commentaries on the Law of Wills* § 45 at 49, § 56 at 64 (1917); E. Miller, *The Construction of Wills in Maryland* § 1 at 1-5 (1927); *O'Hara v. O'Hara,* 185 Md. 321, 44 A. 2d 813 (1945). For other instruments, such as deeds, the date of execution is usually the effective date. *See, e.g.,* Code (1974) Real Property Article § 3-201. Other instruments, such as life insurance contracts and alterable, amendable, or revocable trust instruments, may be immediately effective for some purposes but not effective for other purposes until the maker's death or until the instrument becomes irrevocable or unalterable. The legislature is necessarily charged with knowledge of the different meanings of the words "executed" and "effective" as applied to the various types of

instruments described in § 78 (c). *See, e.g.,* Code (1974) Estates and Trusts Article § 12-102. Its use of the word "executed" in the statute without any reference therein to the effective date of the instrument plainly expresses an intention that § 78 (c) would apply to instruments executed prior to June 1, 1947, without regard to whether the instrument was effective before or after that date. We think the words of the 1961 amendment to § 78 (c) are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them. *See Janda v. General Motors Corp.,* 237 Md. 161, 205 A. 2d 228 (1964). Consequently, our answer to the narrow question certified by the District Court is that the Act of 1961, chapter 287, renders the Act of 1947, chapter 599, retrospective, so that the terms "child," "children," "descendants," and the equivalent in instruments executed and effective prior to June 1, 1947, include adopted children where the adoption occurred after June 1, 1947. In so concluding, we express no opinion on the question whether the 1961 amendment to § 78 (c), as we have interpreted the legislature's purpose and intention in enacting it, violates the fourteenth amendment to the federal constitution; that issue is solely for decision by the District Court.

(2)

As previously stated, the District Court found that the makers of the trust instruments in question had no actual intent either to exclude or include adopted children and that consequently the meaning to be ascribed to the words "child," "children," "descendants" and their equivalent employed in such instruments required resort to the rules of construction. The District Court found no merit in the argument advanced by the appellees that it was the intention of the makers of the instruments, gleaned from the language of the entire instruments, and particularly their use of the terms "child," "children," "descendants," and their equivalent, all read in light of the circumstances at the time the instruments were made, to limit their bounty to blood relatives to the exclusion of any child that might be adopted.

Appellees urge that we give consideration to the actual intention of the makers of the instruments in disposing of the certified question and find, contrary to the findings of the District Court, that the evidentiary presumption contained in § 78 (c) is without application in this case because, by their plain terms, the instruments in question excluded adopted children. Since the narrow matter certified for our consideration asks that we decide a question of statutory interpretation, and not whether the statute applies to the instruments in question, we decline to consider this issue.

> *Question of law answered as herein set forth; costs to abide the result.*