## IDA SCHWEITZER *v.* SONJA BREWER

[No. 146, September Term, 1976.]

*Decided June 7, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Jerome J. Seidenman,* with whom was *David B. Purdum* on the brief, for appellant.

*T. Joseph Touhey* for appellee.

ORTH, J., delivered the opinion of the Court.

Ida Schweitzer (appellant) instituted an action in the Superior Court of Baltimore City for injuries sustained when she was struck by an automobile driven by Sonja Brewer (appellee). After a three day trial, the jury (Grady, J. presiding) rendered a verdict in favor of appellee. Appellant appealed to the Court of Special Appeals, and it affirmed the judgment in a per curiam opinion. *Schweitzer v. Brewer,* No. 1011, September Term, 1975, filed 23 September 1976, unreported. We issued a writ of certiorari upon appellant's petition, but limited our review to the question whether the Court of Special Appeals erred in approving the trial court's instruction regarding the law with respect to pedestrian control signals, Maryland Code (1957, 1970 Repl. Vol.) Art. 66½ (the Maryland Vehicle Law), § 11-203. We find no error and affirm the judgment.

The accident occurred about 5 p.m. on 12 March 1973 at the intersection of Reisterstown Road and Clarks Lane in Baltimore City. At that point Reisterstown Road runs roughly north and south. Clarks Lane runs east and west but "dead ends" at its intersection with Reisterstown Road on the east. On the west side of Reisterstown Road where

Clarks Lane would have continued is the entrance to a large shopping center. Traffic traveling north on Reisterstown Road is accommodated by two lanes; southbound traffic on Reisterstown Road is accommodated by a left turn lane next to a concrete median strip and three through lanes. Vehicular traffic through the intersection is controlled by overhead traffic lights. There is a marked east-west pedestrian crosswalk at the north side of the intersection with "Walk" and "Don't Walk" lights to control pedestrian traffic. The concrete median strip or island extends into the northern half of the crosswalk. A technician for the Baltimore City Department of Transit and Traffic testified that these "Walk" and "Don't Walk" signals are activated by a manual push button control located on each of the corners. There is no control on the median strip. The intersection is programmed so that when the button is pushed the pedestrian control signal changes to "Walk" within ninety seconds. The signal to "Walk" remains for ten to twelve seconds. It then changes, without flashing, to "Don't Walk." The vehicular control light, however, does not change from red to green to permit a vehicle to proceed into the pedestrian crosswalk for an additional fifteen to twenty-one seconds. Thus, from the time a signal to "Walk" appears, a pedestrian has from twenty-five to thirty-three seconds to cross the intersection in the crosswalk — ten to twelve seconds on the "Walk" signal plus fifteen to twenty-one seconds on the "Don't Walk" signal. There was no indication that at the time of the accident the controls were not operating as the technician described.

The accident occurred when appellant was struck by appellee's car while she was walking within the pedestrian crosswalk in a westerly direction across Reisterstown Road at the north side of the intersection. Appellee's car, proceeding south on Reisterstown Road in the curb lane, had entered the pedestrian crosswalk "while facing a green light."[1] According to appellant, as she arrived at the

---

1. The trial judge charged the jury:

In the present case the evidence is uncontradicted that at the time of the accident in question both vehicular traffic and

northeast corner of the intersection, the signal light controlling vehicles crossing Reisterstown Road turned to green and the signal light controlling pedestrians crossing Reisterstown Road turned to "Walk." She had not pushed the pedestrian control button, so apparently it had been activated by another pedestrian on one of the corners of the intersection. She immediately proceeded "to walk briskly across the street" within the pedestrian crosswalk. She did not step up on the median strip or island extending halfway into the crosswalk, but by-passed it on the left. The pedestrian control was still on "Walk" when she was "past the third lane of the median strip . . . right near the [west] side of Reisterstown Road." She had walked past two southbound automobiles which had stopped west of the island awaiting the traffic light to change from red to green. After that she did not remember anything.

Julia Goetze was the driver of the automobile which was at a standstill in the southbound lane of Reisterstown Road next to the left turn lane, that is in the second lane west of the median strip. She first saw appellant "on the median strip." Mrs. Goetze testified: "I noticed that [appellant] paused slightly on the median strip and stepped off into my lane of traffic, crossed in front of my car and as I remember about half way in front of the car immediately to my right at which time the lights changed from red to green. It seemed she had looked over her left shoulder and glanced at the light and at that time she quickened her gait." Appellant was struck by a car which appeared to be slowing down and then "accelerated quickly," when she was in the second lane to the right of Mrs. Goetze, that is "the right southbound lane."

Frederick Voelker, Jr. and his wife Dawn, were in the car southbound in the lane next to the curb lane. The car was at a standstill for the red light. Voelker's testimony was that he

<hr>

pedestrian at the intersection of Reisterstown Road and Clarks Lane were controlled by automatic traffic signals. The evidence is also uncontradicted that at the time the defendant's automobile and the plaintiff collided, the plaintiff was crossing Reisterstown Road within the confines of a marked pedestrian crosswalk. The evidence is also uncontradicted that the defendant's automobile had entered the pedestrian crosswalk while facing a green light.

saw appellant crossing the street in the crosswalk, and as she approached the left side of his car the light changed from red to green. The curb lane, according to the witness, was then unoccupied, but as appellant took one or two steps into the curb lane, she was struck by appellee's car which stopped within approximately eight feet after striking her.

Appellant was "about midway in the center of [the Voelker] car" when Dawn Voelker first saw her. The traffic light at that time was green for southbound vehicles. Appellant "seemed either to look in or over the top of [the Voelker] car, and then she walked into the other lane, and that is when she was struck." Appellant "was looking straight ahead" when she was struck.

Appellee testified that just prior to the accident she was driving her car south on Reisterstown Road at approximately 15 to 20 miles per hour. About one-half block from the Clarks Lane intersection, she observed that the light for Reisterstown Road traffic was red. She braked her car and when she was about two car lengths behind the Voelker car, the light changed from red to green. She planned to proceed through the intersection and as she did, she observed appellant for the first time directly in front of her car. She immediately applied her brakes but the car struck appellant. The car came to a stop within approximately a half a car length.

It is plain that on the evidence adduced the issues of appellee's negligence and appellant's contributory negligence were properly for the jury, and appellant makes no claim to the contrary. Nor on appeal did she challenge the trial judge's instructions as to appellee's negligence which were given with reference to the law concerning a vehicle proceeding on a green light. She did, however, complain below, on appeal, and in her petition for a writ of certiorari about the judge's instructions on contributory negligence as given in the light of the statute on "Pedestrian control signals," § 11-203 of the Maryland Vehicle Law.[2]

2. The court's instructions with respect to liability were given to the jury twice. The first time they were included in the charge given at the close of all the evidence. About 25 minutes after the jury retired to deliberate its

Section 11-203 of the Maryland Vehicle Law provides:

> Whenever special pedestrian control signals exhibiting the words "walk" or "don't walk" or "wait" are in place, they shall indicate as follows:
>
> (1) *Walk.* — Pedestrian facing this signal may proceed across the roadway in the direction of the signal and shall be given the right-of-way by the drivers of all vehicles. At an intersection where an exclusive all pedestrian interval is provided, pedestrians may proceed across the roadway in any direction within the intersection.
>
> (2) *Don't walk or wait.* — No pedestrian shall start to cross the roadway in the direction of this signal, and any pedestrian who has partially completed his crossing on the "walk" signal shall proceed without delay to a sidewalk or safety island while the "don't walk" or "wait" signal is showing.

Without specifically identifying the statute, the judge read its relevant provisions to the jury. He explained that they need pay no attention to "wait," obviously because the control here did not contain a "wait" signal, and that the provisions concerning "an exclusive all pedestrian interval" were, of course, not applicable, the controls at the intersection involved being not so programmed. The judge then applied the statute to three possible factual findings by the jury on the evidence. If the jury found

> (1) that there was a "Don't Walk" signal when appellant arrived at the intersection, it was her duty to obey and not start across;

---

verdict, they sent a message to the court requesting its instructions pertaining to "Maryland Code 66½, Re Pedestrians' and Drivers' Right of Way." After conferring with counsel, the court, over objection of appellant's counsel, replied:

> All of the Court's instructions on the question of liability refer to the respective right of way of pedestrians and drivers. To repeat any part thereof may improperly emphasize one facet of the law. Are you requesting that I repeat all of the instructions on the question of liability?

The jury answered: "Yes." Thereupon the court gave again, with slight variation, its instructions on liability as previously given.

(2) that there was a "Walk" signal when appellant started across the intersection which changed to "Don't Walk" before she reached the median strip or island between the north and southbound lanes of Reisterstown Road, she had the duty to proceed without delay to the island *and wait there until a signal facing her was in her favor indicating 'Walk'.*" [3] (emphasis added).

(3) that there was a "Walk" signal when appellant left or passed the median strip or safety island and that the signal thereafter changed to "Don't Walk" while she was crossing the southbound lanes of Reisterstown Road, she was entitled to continue her crossing by proceeding without delay to the sidewalk on the west side of Reisterstown Road.

The judge then summed up:

In summary, if you find that the pedestrian signal read "Don't walk" when the plaintiff left either the east curb of Reisterstown Road or the safety island dividing Reisterstown Road, if the sign was "Don't walk" at that time, then the plaintiff, in walking against that sign, was in violation of the law. If you find that such a violation directly caused or contributed to causing her injury, then the plaintiff cannot recover and your verdict must be in favor of the defendant. However, if you find that the signal changed from

---

**3.** In the second charge on the subject the court substituted "and to not leave the safety island in the face of a 'Don't Walk' signal" for the phrase above emphasized. We agree with the trial judge that the distinction between what he said the first time and what he said the second time was one without a difference. He observed in reply to appellant's complaint:

Whether I said that she must go to the island and remain there until the signal says "Walk" or go to the island and not leave on a "Don't Walk" signal, it seems to me it is exactly the same thing.

We do not see any confusion to the jury by this difference in the wording of the two charges. Nor do we find any prejudice to appellant in the trial judge's failure to recall during appellant's closing argument that he had indicated appellant had the duty to "wait" on the safety island, especially in the light of the second charge given thereafter.

"Walk" to "Don't walk" after the plaintiff had left the safety island or median strip and while she was crossing the southbound lanes of Reisterstown Road, then the plaintiff was entitled to continue her passage to the west curb of Reisterstown Road. If you find this to be the case, the plaintiff, having started across the southbound side of Reisterstown Road with a traffic signal in her favor, was entitled to the right of way over vehicles in the intersection and this right of way continued although the signal had changed to release halted traffic before the plaintiff had reached the other side of the road. So that in the case of a changing signal, where the plaintiff had left the curb or the safety island with a "walk" signal and the signal thereafter changed, reasonable time to complete the pedestrian's crossing must be given to the pedestrian by the motorist, and it is the duty of the motorist to exercise care to avoid striking the pedestrian if she has a reasonable chance of seeing the pedestrian and avoiding the accident.[4]

Appellant's contention concerns that part of the charge which imposed a duty on her to proceed to and remain on the safety island.[5] She contends that in the instruction the court

---

4. This summary was given verbatim in the second charge, as was a caveat upon a finding that appellant had the right of way. The judge cautioned in both charges:

> If your finding is that the plaintiff did have the right of way at the time she was struck, you are instructed that this right of way is not unlimited and does not free her from the obligation to exercise due care in asserting her right of way. So that she must still use ordinary care to look for approaching traffic and may not walk directly into the path of an oncoming vehicle with blind indifference to her own safety.

5. Appellant did not suggest to the trial court or the Court of Special Appeals and does not suggest to us that the median strip separating the north and southbound lanes of Reisterstown Road was not a "safety island" in the contemplation of § 11-203 of the Maryland Vehicle Law and, consequently, we do not consider this matter. According to a plat received in evidence as a joint exhibit, the raised concrete median strip, as we have indicated, extended into the northern half of the market pedestrian lane and would serve as a place of some refuge for those crossing the street within confines of the lane. *See* Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 1-179 for definition of "safety zone." *See also* Jackson v. Yellow Cab Company, 222 Md. 367, 369-371, 160 A. 2d 612 (1960).

"not only misstated the law and added to the statute, but . . . placed a duty upon [her] which § 11-203 did not." We no more accept those assertions than did the Court of Special Appeals which flatly rejected them.

We have often said that the cardinal rule of construction of a statute is to effectuate the actual intention of the legislature. The criteria for the determination of this intention have been firmly established,[6] and they were recently summarized in *Mazor v. State Department of Correction,* 279 Md. 355, 360-361, 369 A. 2d 82 (1977). The primary source from which we glean the legislative intent is the language of the statute itself. When the intent is expressed in clear and unambiguous language, this Court will carry it out, if no constitutional guarantees are impaired. Words are granted their ordinary signification so as to construe the statute according to the natural import of the language used without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. If reasonably possible the parts of a statute are to be reconciled and harmonized, the intention as to any one part being found by reading all the parts together, and none of its words, clauses, phrases, or sentences shall be rendered surplusage or meaningless. Results that are unreasonable, illogical or inconsistent with common sense should be

---

6. *See,* for example, Blumenthal v. Clerk of Cir. Ct., 278 Md. 398, 403, 365 A. 2d 279 (1976); Howell v. State, 278 Md. 389, 392, 364 A. 2d 797 (1976); Thomas v. State, 277 Md. 314, 317, 353 A. 2d 256 (1976); State v. Fabritz, 276 Md. 416, 421-422, 348 A. 2d 275 (1975); Gillespie v. R & J Constr. Co., 275 Md. 454, 457, 341 A. 2d 417 (1975); Slate v. Zitomer, 275 Md. 534, 539-540, 341 A. 2d 789 (1975); Prince George's County v. White, 275 Md. 314, 319, 340 A. 2d 236 (1975); Bright v. Unsat. C. & J. Fund Bd., 275 Md. 165, 169, 338 A. 2d 248 (1975); St. Paul Fire & Mar. v. Ins. Comm'r, 275 Md. 130, 139, 339 A. 2d 291 (1975); Karns v. Liquid Carbonic Corp., 275 Md. 1, 18, 338 A. 2d 251 (1975); Fairchild v. Maritime Air Ser., 274 Md. 181, 185-186, 333 A. 2d 313 (1975); Purifoy v. Merc.-Safe Dep. & Trust, 273 Md. 58, 65, 327 A. 2d 483 (1974); Md.-Nat'l Cap. P. & P. v. Rockville, 272 Md. 550, 556, 325 A. 2d 748 (1974); Grosvenor v. Supervisor of Assess., 271 Md. 232, 237-238, 315 A. 2d 758 (1974); Radio Communications, Inc. v. Public Service Commission, 271 Md. 82, 93, 314 A. 2d 118 (1974); Blocher v. Harlow, 268 Md. 571, 584, 303 A. 2d 395 (1973); Department v. Greyhound, 247 Md. 662, 669, 234 A. 2d 255 (1967); Md. Medical Service v. Carver, 238 Md. 466, 478, 209 A. 2d 582 (1965); Baltimore County v. White, 235 Md. 212, 218, 201 A. 2d 358 (1964); Height v. State, 225 Md. 251, 257, 170 A. 2d 212 (1961); Pressman v. Barnes, 209 Md. 544, 558, 121 A. 2d 816 (1956); Schmeizl v. Schmeizl, 186 Md. 371, 375, 46 A. 2d 619 (1946).

avoided whenever possible consistent with the statutory language. In other words, an interpretation should be given to statutory language which will not lead to absurd consequences.

Appellant urges that § 11-203 of the Maryland Vehicle Law "in no way commands 'any' pedestrian to go first to a safety island, or turn around and go back to the safety island, merely because he or she may be closer to it. . . ." She suggests that once she started across the intersection on a "Walk" signal, she had a choice of going to the safety island or all the way across to the opposite sidewalk. She supports this interpretation by the fact that the pedestrian signal could not be activated on the safety island so that a pedestrian on the island could be in limbo indefinitely. She argues that the court's interpretation of the statute was contrary to the standard of care to be used in measuring contributory negligence which we have enunciated. We said in *Menish v. Polinger Company*, 277 Md. 553, 559, 356 A. 2d 233 (1976):

> In measuring contributory negligence, the standard of care to be used as the criterion is that of an ordinarily prudent person under the same or similar circumstances, not that of a very cautious person. *Sanders v. Williams,* 209 Md. 149, 153, 120 A. 2d 397, 399 (1956); and what an ordinarily prudent and careful person would do under a given set of circumstances is usually controlled by the instinctive urge of one to protect himself from harm. *Greer Lines Company v. Roberts,* 216 Md. 69, 79, 139 A. 2d 235, 239 (1958); *Martin v. Sweeney,* 207 Md. 543, 548, 114 A. 2d 825, 827 (1955).

We apply this criterion, however, recognizing that "every person having the capacity to exercise ordinary and reasonable care for his own protection against injury, will do so . . . ." *Id.,* at 558-559. Thus, a person is contributively negligent when he fails to observe such ordinary care for his own safety. "[Contributory negligence] is the doing of something that a person of ordinary prudence would not

do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Potts v. Armour & Co.*, 183 Md. 483, 490, 39 A. 2d 552 (1944). *See, Craig v. Greenbelt Consumer Services, Inc.*, 244 Md. 95, 97 222 A. 2d 836 (1966). It is appellant's notion that if the jury found that she began her crossing on a "Walk" signal which changed to "Don't Walk" before she reached the safety island, it was for the jury to decide whether it was "within the realm of reasonable conduct for the reasonable prudent [person] under the circumstances here present" to proceed to the sidewalk at the far side of the intersection without going to and remaining on the safety island until the signal changed to "Walk." She claims that the instruction of the court was wrong because it "virtually precluded the jury from applying the standard of conduct" which we have accepted in measuring contributory negligence.

The general rule regarding the standard of conduct applied under our decisions to measure contributory negligence does not supersede a prescription of conduct by the legislature. As we have indicated, what governs is the legislature's intention regarding a person who has partially completed his crossing while the "Don't Walk" signal is showing, not necessarily what a "reasonably prudent" person would do under such circumstances. We said in *Md. Medical Service v. Carver*, 238 Md. 466, 478, 209 A. 2d 582 (1965):

> If the legislative intent is expressed in clear and unambiguous language, this will be carried into effect by this Court even if this Court might be of the opinion that the policy of the legislation is unwise, or even harsh or unjust, if no constitutional guarantees are impaired by the legislation.

We see no ambiguity or obscurity in the language used in § 11-203 and find that the legislative intent is clear without the need to look beyond the statute to ascertain it. In so finding, we in no way imply that it is unwise, harsh or unjust. Patently, the legislature sought to protect the

pedestrian, and its intent is not, in any event, inconsistent with what a reasonably prudent person would do in like circumstances. And there are, of course, no constitutional guarantees impaired by the legislation.

Section 11-203 (2) plainly states that "any pedestrian who has partially completed his crossing on the 'walk' signal shall proceed *without delay* to *a* sidewalk or safety island while the 'don't walk' . . . signal is showing." (emphasis added). This part of the statute, considered with the granting of the right-of-way in subsection (1) to a pedestrian facing a "Walk" signal and permission for him to proceed on such signal across the roadway in the direction of the signal, and considered with the prohibition in the first part of subsection (2) against starting across the roadway in the direction of a "Don't Walk" signal, means exactly what it plainly says. A pedestrian lawfully entering the intersection on a "Walk" signal, must, when faced with a "Don't Walk" signal while crossing, proceed *without delay* to *a* sidewalk or safety island. This cannot mean to proceed to a remote sidewalk or safety island; to do that would not be "without delay." It means to proceed to such a refuge which satisfies "the instinctive urge of a person to protect himself from harm," that is the sidewalk or safety island most readily accessible in the circumstances. As the Court of Special Appeals observed: "Any individual with a modicum of common sense and a prudent respect for his or her own safety would follow this course." This meaning, definite and sensible, is entirely consistent with the natural import of the words of the statute. An unreasonable and illogical result, inconsistent with common sense, would follow if the statute were construed to mean that a pedestrian, only a step or two into the intersection when the signal changed to "Don't Walk," may nevertheless continue on to the far sidewalk, by-passing a safety island on the way, or having reached that place of safety, departing from it in the face of a "Don't Walk" command. The fact that there was no control on the safety island to activate the pedestrian signal does not alter the clear duty imposed upon the pedestrian by the statute.

Under the instructions of the trial court the jury could have properly reached a verdict in favor of appellee:

(1) by finding that there was no negligence on the part of the appellee which caused the injury to the appellant; or

(2) despite primary negligence on the part of appellee, upon a finding that appellant contributed to her injury:

    (a) by entering the intersection unlawfully on a "Don't Walk" signal; or

    (b) by entering the intersection lawfully on a "Walk" signal which changed to "Don't Walk" before she reached the safety island, whereupon she:

        (i) by-passed the safety island and proceeded toward the far sidewalk; or

        (ii) mounted the safety island but left in the face of the "Don't Walk" signal to cross the remaining traffic lanes; or

    (c) by entering the intersection lawfully on a "Walk" signal which changed to "Don't Walk" after she passed the safety island but failed to exercise due care in asserting her right of way.

Appellant challenges the court's instructions only as they pertain to (2) (b), and we see no error with regard to them. They did not mistake the law, add to the statute, or place a duty on appellant which the statute did not.

*Judgment affirmed; appellant to pay costs.*