STATE DEPARTMENT OF ASSESSMENTS AND
TAXATION *v.* PHILIP M. GLICK ET UX.

[No. 143, September Term, 1980.]

*Decided November 10, 1980.*

The cause was argued before MASON, LISS and MacDANIEL,
JJ.

*Peter W. Taliaferro, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Amicus curiae* brief filed by *Elmer J. Kelsey.*

*Philip M. Glick* for appellees.

MacDANIEL, J., delivered the opinion of the Court.

In this appeal we are asked to construe the definition of "gross income" which appears in the Real Property Tax Credit Act (the so-called "circuit-breaker" credit) codified in Article 81, § 12F-1 of the Annotated Code of Maryland. Specifically, appellant, the State Department of Assessments and Taxation, asks us to decide whether the return of monies, formerly withheld from a federal employee's earnings and currently repaid as pension benefits constitutes "gross income" within the meaning of the Act.

The facts are not in dispute. Philip M. Glick and his wife Rose, appellees, live at their home in Montgomery County, Maryland. Philip Glick is a retired federal employee. He has received a retirement pension from the Civil Service Retirement Fund since 1971. In 1974, when the Property Tax Credit Program went into effect, the Fund paid appellee Philip Glick $17,986. At that time they notified him that this sum included the last of his past contributions to the Fund, $7,581.[1]

---

1. The United States Civil Service Retirement Act, 5 U.S.C. § 8331, *et seq.,* required that appellee Philip Glick contribute to the retirement fund during the term of his employment with the Federal Government, between 1933 and 1953 and between 1967 and 1973. The Act also provides that if an employee resigns or dies before he has retired from the U. S. Civil Service his total contribution is to be repaid to him or to his designated survivor or to his estate, with interest from the date of original contribution.

Although the $7,581 in question was paid into the Fund as a series of deductions from his salary, appellee was nevertheless obligated to report these deductions as part of his taxable income, as and when the deductions were credited to his account.

This amount, $7,581, when returned to him in 1974, represented the last of the monies which he had paid into the Fund. Both parties agree that the remainder of the 1974 payment ($10,405) and all future pension payments constitute income *per se,* as distinct from a return of capital.

In August 1975, appellees filed an application for a property tax credit with the Department of Finance of Montgomery County. Appellees stated that Philip Glick's gross income for 1974 included $10,405 which he had received as a pension; they stated that he had also received a repayment of $7,581 in that tax year from the Civil Service Retirement Fund, but that this represented a return of his contributions to the Fund. Appellees denied that the $7,581 constituted "income" when received in 1974.

The Montgomery County Finance Department disagreed. In September 1975, they ruled that both the $10,405 received as a pension and the $7,581 received as a repayment of past contributions constituted "income" for purposes of the Act. The Department then applied the statute's eligibility formula and ruled that appellees did not qualify for a property tax credit.[2]

Appellees appealed the County Finance Department's ruling to the Property Tax Assessment Appeal Board of Montgomery County. In June 1976, the Board reversed the Finance Department's ruling, and directed the county not to include the repayment of $7,581 in its calculation of appellees' 1974 "gross income" under § 12F-1 of the Act. In August 1976, the State appealed the Board's decision to the Maryland Tax Court. A trial de novo was held in June 1977, and in February 1978, the Tax Court issued an Order and Memorandum of Grounds for Decision affirming the Board's ruling. The State then appealed the Tax Court's Order to the Circuit Court for Montgomery County. On November 1, 1979, the circuit court affirmed the Tax Court's decision. This appeal followed.

Before turning to consider the question for decision, we think it advisable to comment upon the proper standard of review in cases such as this. Appellees assert that judicial review of decisions of the Maryland Tax Court is, by statute, severely limited. The circuit court noted as much in delivering its ruling from the bench, citing Article 81, § 229

---

2. Both parties to this appeal agree that if the $7,581 in question were not "income" under the Act, then appellees are entitled to the tax credit requested.

O of the Annotated Code of Maryland to the effect that the "circuit court . . . shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." And, in *Comptroller v. Diebold, Inc.*, 279 Md. 401 (1977), the Court of Appeals stated, at 407:

> "We have held that the standard by which a result reached by the Tax Court is reviewed is whether a reasoning mind reasonably could have reached the factual conclusion which that agency reached, *Fairchild Hiller Corp. v. Supervisor of Assessments*, 267 Md. 519, 298 A.2d 148, 149 (1973). The application of this test need not and must not be either judicial fact finding or a substitution of judicial judgment for agency judgment."

And *see Comptroller v. Mandel Re-election Com.*, 280 Md. 575 (1977).

But, as we have said, the *facts* here are undisputed; and the State does not so much challenge the correctness of the Tax Court's fact-finding, but rather the correctness of its (and the circuit court's) interpretation of the definition of "gross income" contained in the statute. As such, the State presents a question of law, and the scope of our review is clear. The general proposition is contained in 73 C.J.S. *Public Administrative Bodies and Procedure* § 228, from which we quote:

> "On a judicial review of an order, decision, or award of an administrative officer, board, commission, or agency, questions of law are open for consideration and determination. An administrative agency's conclusion of law, or its determination, or decision of a question of law, is subject to judicial review; and on such review the court is free to substitute its own judgment for, and is not bound or concluded by, the judgment or conclusion of the agency. The reviewing court may correct errors of law; and it may interfere where the administrative agency has violated, misconceived,

improperly construed, or failed to follow, the law, or has proceeded on an erroneous theory of law, or committed a material error of law. . . . A reviewable question of law may exist where the facts are not in dispute, even though the administrative agency has erroneously labeled or styled its conclusion thereon a finding of fact. So, too, the lack of substantial conflict in the evidence may render a question, which is ordinarily one of fact for a board or commission, one of law for a court. The legal effect of evidence and the ultimate conclusions drawn by an administrative agency from the facts, as distinguished from its findings of primary or evidential facts, are questions of law for the reviewing court." (Footnotes omitted.)

And *see generally Snowden v. Mayor and C.C. of Balto.,* 224 Md. 443 (1961) (Court will correct illegal action of administrative agency); *Gower v. Davis Coal and Coke Co.,* 197 Md. 52 (1951) (administrative finding based upon erroneous conception of law "clearly reviewable"); and *Brown v. Md. Unemp. Comp. Board,* 189 Md. 233 (1947) (though facts undisputed, implications of facts constitute question of law). Having these precepts in mind, we turn to address the sole issue in this appeal.

The so-called "circuit-breaker" tax credit, codified as Article 81, § 12F-1 of the Annotated Code of Maryland, was enacted by the General Assembly during the 1974 legislative session.[3] Section (a) provides that,

"For taxable year 1975-1976 and each year thereafter, there is created a program of property tax credits from real property taxation imposed by the State, counties, Baltimore City, municipal corporations and special taxing districts for certain homeowners by reason of income."

---

**3.** Laws of Maryland, 1974, ch. 750. Repealed and reenacted, Laws of Maryland, Special Session 1975, ch. 1; repealed, reenacted and substantially recodified by Laws of Maryland, 1978, ch. 176. Statutory references herein pertain to § 12F-1 as in force and effect at all times relevant to this appeal.

The tax credit is derived by applying the formula contained in section (c); the exact amount of the homeowner's credit is established through comparison of his financial condition (as measured by "gross income") with his property tax bill. "Gross income" is defined in section (b) (2) as follows:

> " '*Gross income*' means total income from all sources, for the calendar year immediately preceding the taxable year, whether or not included in the definitions of gross income for federal or State tax purposes, including but not limited to benefits under the Social Security Act or Railroad Retirement Act as these acts may be amended from time to time, the aggregate of gifts in excess of $300, alimony, support money, non-taxable strike benefits, public assistance received in cash grants, pensions, annuities, unemployment insurance benefits, and workmen's compensation benefits. Gross income shall include the net income received from business, rental, or other endeavors but in no event shall a loss from business, rental or other endeavors be used in the determination of gross income."

Essentially, appellees argue that the Maryland Property Tax Credit Act makes "income" the controlling determinant of eligibility; that "income" is a term of art; that it is not the same thing as money, or cash flow, or a return of what one has himself paid out but to which one remains entitled. Appellees direct our attention to a body of cases and other authority construing "income," beginning with the United States Supreme Court's decision in *Eisner v. Macomber,* 252 U.S. 189 (1920), wherein the Court stated, at 207, "Income may be defined as the gain derived from capital, from labor, or from both combined," provided it be understood to include profit gained through a sale or conversion of capital assets." Appellees insist that although they are not relying on the fact that both Federal and State income tax laws exclude the repayments in question from gross income, nevertheless they are relying on the fact that, by the terms of the Act

itself, "gross income" is defined to include "*income* from all sources. . . ." And thus, by indirection, they insist that the definition of "income" referred to earlier must control. We find this argument unpersuasive. We think that what must control here, as in other cases of statutory interpretation, is the real and actual intention of the Legislature as expressed in the terms of the statute, taken as a whole. The Court of Appeals expressed this in greater detail in *Comptroller v. Mandel Re-election Com., supra,* at 578-80:

"Principles relative to statutory construction were summed up for the Court by Chief Judge Murphy in *State v. Fabritz,* 276 Md. 416, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942 (1976):

'The cardinal rule in the construction of statutes is to effectuate the real and actual intention of the Legislature. *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 327 A.2d 483 (1974); *Scoville Serv., Inc. v. Comptroller,* 269 Md. 390, 306 A.2d 534 (1973); *Height v. State,* 225 Md. 251, 170 A.2d 212 (1961). Equally well settled is the principle that statutes are to be construed reasonably with reference to the purpose to be accomplished, *Walker v. Montgomery County,* 244 Md. 98, 223 A.2d 181 (1966), and in light of the evils or mischief sought to be remedied, *Mitchell v. State,* 115 Md. 360, 80 A.2d 1020 (1911); in other words, every statutory enactment must be "considered in its entirety, and in the context of the purpose underlying [its] enactment," *Giant of Md. v. State's Attorney,* 267 Md. 501 at 509, 298 A.2d 427, at 432 (1973). Of course, a statute should be construed according to the ordinary and natural import of its language, since it is the language of the statute which constitutes the primary source for determining the legislative intent. *Grosvenor v. Supervisor of Assess.,* 271 Md. 232, 315 A.2d 758 (1974); *Height*

*v. State, supra.* Where there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intention of the Legislature. *Purifoy v. Merc.-Safe Deposit & Trust, supra.* Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning. *Gatewood v. State,* 244 Md. 609, 224 A.2d 677 (1966). On the other hand, as stated in *Maguire v. State,* 192 Md. 615, 623, 65 A.2d 299, 302 (1949), "[a]dherence to the meaning of words does not require or permit isolation of words from their context '* * * [since] the meaning of the plainest words in a statute may be controlled by the context. . . .' " In construing statutes, therefore, results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning. *B. F. Saul Co. v. West End Park,* 250 Md. 707, 246 A.2d 591 (1968); *Sanza v. Md. Board of Censors,* 245 Md. 319, 226 A.2d 317 (1967); *Height v. State, supra.' Id.* at 421-22."

Having considered the definition of "gross income" as contained in Article 81, § 12F-1 (b) (2) "reasonably," and "with reference to the purpose to be accomplished" by enactment of the circuit-breaker tax credit, we are convinced that the term was meant to encompass the total amount of the payments which appellee Philip Glick received from the Civil Service Retirement Fund during 1974; that is to say, including the $7,581 in question. For purposes of application to this case, we find that the language of the statute is not ambiguous, that it expresses a definite and sensible meaning, and that the legislative intent is plain. At the

General Assembly's insistence, Article 81, § 12F-1 (b) (2) contains not only the general instruction that gross income shall be defined without reference to Federal or State tax statutes ("gross income means total income ... whether or not included in the definitions of gross income for federal or State tax purposes ..."). It also defines gross income by specific reference to certain receipts which are undoubtedly excluded *in full* from income taxation, as for example under the Federal income tax statute and accompanying regulations: Social Security benefits,[4] Railroad Retirement Act benefits,[5] and "the aggregate of gifts in excess of $300." [6] Taken as a whole, we think the language of the statute evinces a clear design that all monies accruing to the household during the levy year be included in the homeowner's gross income for purposes of determining his eligibility for a tax credit. There is absolutely nothing in this language which authorizes the exclusion of paid-in capital from the amount of "pension" payments received, simply because this practice is followed in computing gross income for Federal tax purposes; and we shall not "read in" such a provision.

. We reach our result by construing the statute according to the ordinary and natural import of its language. But even if we were to concede, for purposes of argument, appellees' assertion that the language of the statute is ambiguous or obscure (a concession which would oblige us to look elsewhere to ascertain legislative intent), our result would not change. In our view, the legislative history of Article 81, § 12F-1 (b) (2) since its adoption constitute incontrovertible proof that the statutory language was chosen deliberately, not inadvertently. The predominant theme of that history is the Legislature's insistence that the definition of "gross income" remain all-encompassing. Between the 1975 and 1979 legislative sessions not less than 12 Senate Bills,[7] and

---

**4.** 26 U.S.C. § 61; Reg. § 1.61-1; Rev. Rul. 70-217, 1970-71 CB 12.

**5.** 26 U.S.C. § 72; Reg. § 1.72-13; Rev. Rul. 70-343, 1970-72 CB 4.

**6.** 26 U.S.C. § 102; Reg. § 1.102-1(a).

**7.** S.B. 277, Maryland Senate Journal, 1975, p. 276 ("... excluding benefits received under a federal retirement system from the definition of gross income."); S.B. 374, Maryland Senate Journal, 1975, p. 421 ("...

15 House Bills,[8] have been offered for the purpose of amending the definition of gross income in order to provide

prohibiting income from U.S. Civil Service Pensions to be included in gross income for the purposes of certain homeowners' tax credits.); S.B. 91, Maryland Senate Journal, 1976, p. 105 (". . . providing that the definitions of combined income under the property tax credit programs . . . mean only the combined gross income of the homeowner[s] . . ."); S.B. 753, Maryland Senate Journal, 1976, p. 853 (". . . excepting certain benefit payments under the Social Security Act or Railroad Retirement Act from the definition of gross income; and excepting certain contributions of certain persons to the support of their parent homeowners from the definition of combined income."); S.B. 46, Maryland Senate Journal, 1977, p. 120 (". . . providing that the definitions of combined income under the property tax credit programs . . . be changed to mean only the combined gross income of the homeowner[s] . . ."); S.B. 73, Maryland Senate Journal, 1977, p. 132 (". . . excepting certain benefit payments under the Social Security Act or Railroad Retirement Act from the definitions of gross income; and excepting certain contributions of certain persons to the support of their parent homeowners from the definition of combined income."); S.B. 378, Maryland Senate Journal, 1977, p. 401 (". . . excluding from the definition of combined income . . . certain benefits received under the Social Security Act, as amended."); S.B. 785, Maryland Senate Journal, 1977, p. 1020 (". . . excepting the benefits of the Social Security Act and the Railroad Retirement Act from the definition of gross income . . . when these benefits exceed a certain percentage of gross income."); S.B. 786, Maryland Senate Journal, 1977, p. 1021 (". . . changing the definition of gross income for purposes of the circuit breaker tax credits for certain taxpayers."); S.B. 51, Maryland Senate Journal, 1978, p. 127 (". . . providing that the definitions of combined income . . . be changed to mean only the combined gross income of the homeowner[s] . . ."); S.B. 861, Maryland Senate Journal, 1978, p. 2082 (". . . modifying the definition of combined income for certain property tax credit purposes."); S.B. 446, Maryland Senate Journal, 1979, p. 396 (". . . providing that Social Security and Railroad Retirement benefits are not included in gross income for purposes of determining certain property tax credits; . . .").

**8.** H.B. 55, Maryland House Journal, 1975, p. 91 (". . . changing and adding certain definitions for the purpose of applying certain real property tax credits; . . ."); H.B. 56, Maryland House Journal, 1975, p. 92 (". . . excluding benefits received under the Social Security Act or Railroad Retirement Act from "gross income" . . .); H.B. 1339, Maryland House Journal, 1975, pp. 1276-77 (". . . excluding from the definition of "gross income" . . . certain payments of military disability benefits."); H.B. 89, Maryland House Journal, 1976, p. 159 (". . . excluding benefits received under the Social Security Act or Railroad Retirement Act from "gross income" . . ."); H.B. 153, Maryland House Journal, 1976, p. 190 (". . . excluding benefits received under the Social Security Act and Railroad Retirement Act from the definition of "gross income" in the property tax credit program for elderly homeowners."); H.B. 606, Maryland House Journal, 1977, p. 427-28 (. . . excluding from the computation of "gross income" in the property tax credit program certain benefits under the Social Security and Railroad Retirement Acts."); H.B. 1226, Maryland House Journal, 1977, p. 987 (". . . removing benefits received under the Social Security Act or the Railroad Retirement Act from the definition of "Gross Income" as used in certain property tax credit programs."); H.B. 1507, Maryland House Journal, 1977, p. 1255 (". . . excluding from the definition of combined income the income of certain full-time students."); H.B. 862,

exclusions for one or another of the types of income listed therein. Indeed, during the 1975 legislative session two bills were introduced specifically "[to exclude] benefits received under a federal retirement system from the definition of gross income," [9] and "[to prohibit] income from U. S. Civil Service Pensions to be included in gross income for the purposes of certain homeowners' tax credits." [10] Almost without exception,[11] none of these bills was ever favorably reported out of the committees to which they had been referred. Manifestly, then, the Legislature intends that Article 81, § 12F-1 (b) (2) shall mean exactly what it says: "gross income means total income. . . ." It is not for this Court to hold otherwise.

Finally, appellees suggest that it is in some sense "unfair" that they should have to declare as gross income that part of appellee Philip Glick's pension representing a return of his contributions to the retirement fund. They argue that these contributions were already counted as part of Philip Glick's taxable income once, when the monies were deducted from his salary and credited to his account with the Fund. We

Maryland House Journal, 1978, p. 572 (". . . excluding benefits received under the Social Security Act from the definition of gross income used in determining eligibility for certain property tax credits."); H.B. 1003, Maryland House Journal, 1978, p. 720 (". . . excluding certain benefits from the definition of gross income from certain property tax credit programs."); H.B. 1004, Maryland House Journal, 1978, p. 720 (". . . excluding from the computation of "gross income" . . . certain benefits under the Social Security and Railroad Retirement Acts."); H.B. 1005, Maryland House Journal, 1978, p. 720-21 (". . . excluding certain benefits from the definition of gross income from certain property tax credit programs."); H.B. 172, Maryland House Journal, 1979, p. 149 (". . . excluding certain benefits from the definition of gross income for purposes of the homeowners' tax credit program."); H.B. 846, Maryland House Journal, 1979, pp. 2397-98, 2414-16 (". . . excluding from the definition of gross income certain income tax refunds with regard to those provisions which concern property tax credits for homeowners."); H.B. 923, Maryland House Journal, 1979, p. 665 (". . . exempting income from certain sources when determining eligibility for the Homeowner's Property Tax Credit Program.").

9. S.B. 277, Maryland Senate Journal, 1975, p. 276, see n. 7, supra.

10. S.B. 374, Maryland Senate Journal, 1975, p. 421, see n. 7, supra.

11. H.B. 846, Maryland House Journal, 1979, p. 589, et seq. (". . . excluding from the definition of gross income certain income tax refunds with regard to those provisions which concern property tax credits for homeowners."). Passed by the House of Delegates (116-0) and sent to the Senate, Maryland House Journal, 1979, pp. 2676-77. Passed by the Senate (47-0), Maryland Senate Journal, 1979, p. 3189. Approved May 29, 1979, ch. 590, II Laws of Maryland, 1979, pp. 1658-59, effective July 1, 1979.

take it that by making this argument appellees mean to imply that to include this return of capital in gross income here is to "tax" it "twice."

But Article 81, § 12F-1 is not a tax; rather, the statute grants a *credit* against a *tax* on *real property* which the homeowner would otherwise be obliged to pay: it is a *relief* from a burden which must otherwise be borne by homeowners. And the calculation of "gross income" is not undertaken in order to impose a burden on the taxpayer-homeowner; it is instead undertaken to provide a measure of the homeowner's ability to pay a tax which, but for the statutory credit, would otherwise be due and owing. Therefore, if the prior tax treatment of current receipts is disregarded in the calculation of "gross income" under the statute, it is for the simple reason that such a consideration is irrelevant to the question of ability to pay.

In light of the foregoing, we think the acceptance of appellees' position would inevitably lead to the very sort of "unfairness" about which they now complain. To give an example, former Federal employees such as appellee Philip Glick would be treated as a favored class, distinct from the other retirees receiving Social Security benefits. Both Federal employees, who contribute to the Civil Service Retirement Fund, and other workers, who have Social Security deductions withheld from their salaries, must pay income tax on those withheld contributions or deductions. Nevertheless, while recipients of Social Security benefits cannot have the return of former withholdings excluded from the calculation of § 12F-1 (b) (2) "gross income," appellees would have us hold that he and other Federal pensioners are different and have this right. There is no rational basis for this distinction; it is contrary to both the statute's plain meaning and the Legislature's expressions of intent subsequent to the statute's enactment. Therefore, construing the statute according to the ordinary and natural import of its language, we hold that the total amount of pension payments received by appellees in 1974 constitutes "gross income" within the meaning of the Act.

*Judgment reversed.*
*Appellees to pay the costs.*